J-A08013-15

2015 PA Super 145

| | | |
|---|---|---|
| SAMUEL A. MORGANTE, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | | |
| v. | | |
| KELLY S. MORGANTE, | | |
| Appellee | | No. 1088 MDA 2014 |

Appeal from the Order Entered June 9, 2014
In the Court of Common Pleas of Lycoming County
Civil Division at No(s): 11,20,065

BEFORE:  SHOGAN, WECHT, and STRASSBURGER,[*] JJ.

OPINION BY SHOGAN, J.:                    **FILED JUNE 26, 2015**

Appellant Samuel A. Morgante ("Husband") appeals from the order denying his exceptions to a Master's report and recommendation regarding equitable distribution of property acquired during his marriage to Kelly S. Morgante ("Wife").[1]  We affirm.

The trial court summarized the factual and procedural history of this case as follows:

> The parties were married on May 16, 1987 and separated on February 14, 2010.  Husband served in the Navy for twenty-three years, eighteen of which were during the parties' marriage. Husband now receives a military pension and an additional $871 per month of Veterans Administration disability pay.  Since Husband has been receiving disability he has generally worked

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  We note that a Decree in Divorce was entered on January 14, 2014.

full time. The Master through her amended report set Husband with a net earning capacity of $3,000.00 per month due to his culinary skills and certifications. Wife['s] net monthly income is $2,278.08.

A Master's Hearing in regard to Equitable Distribution was held on August 31, 2012; October 12, 2012; December 9, 2012; supplemented by an Order of Court dated March 5, 2013. A Master's Report and Recommendation in regard to Equitable Distribution was filed on June 25, 2013. On July 10, 2013, Husband filed a Motion to Re-Open/Clarify the Record. Subsequently, Husband filed Exceptions on July 10, 2013 and Amended Exceptions on July 15, 2013. A hearing was scheduled before the Family Court Hearing Officer in regard to the Motion to Re-Open/Clarify the Record on August 23, 2013, regarding Husband's request. On September 5, 2013, the [trial court] heard argument from both parties in regard to the Exceptions filed by Husband on July 10, 2013, and Amended Exceptions filed by Husband on July 15, 2013.

The primary issue in Husband's Motion to Re-Open/Clarify the Record concerned Husband's income and inclusion of his Navy Retirement and Disability payment in his income. This was a very similar issue to the issue raised in Husband's Exceptions. The Court had been advised by the Family Court Hearing Officer, who took the additional evidence on Husband's Motion to Re-Open/Clarify the Record, that an Amended Master's Report would be issued based upon the additional evidence that was received. The Court, therefore, deferred ruling on the Exceptions which were filed by Husband until such time as the Amended Master's Report was issued in light of the fact that the Court anticipated that the Amended Master's Report may or may not resolve the Exceptions or may create new exceptions in the matter. The Court indicated that, upon the entry of the Amended Master's Report, the Court would conduct a telephone conference with counsel for Husband and Wife to determine how the parties wished to proceed on the outstanding Exceptions.

An Amended Master's Report on Equitable Distribution was issued on November 19, 2013. The Court, thereafter, conducted a phone conference with counsel on November 22, 2013, to determine counsel's position on how the Court should proceed with the outstanding Exceptions in light of the Amended Master's

Report on Equitable Distribution being issued. All parties agreed that additional argument would be necessary.

On November 20, 2013, Husband filed Exceptions to the Amended Master's Report. On December 30, 2013, the [trial court] heard argument by the parties on the outstanding Exceptions. On June 9, 2014 this Court issued an Opinion and Order ruling on Husband's Exceptions. The Court's Opinion and Order were prepared without the benefit of a transcript as neither party had paid for its preparation. Both parties agreed that the Court would review the Master's notes in making determinations regarding personal property.

Trial Court Opinion, 8/29/14, at 2–4.[2] The trial court granted some of Husband's exceptions and denied others. Order, 6/9/14. Husband filed a notice of appeal on June 20, 2014, and an amended notice of appeal on July 9, 2014. Husband and the trial court complied with Pa.R.A.P. 1925.

On appeal, Husband presents the following questions for review:

[1] Whether the trial court failed to distribute Husband's military retirement plan consistent with Pennsylvania and Federal law when it ordered Husband to indemnify Wife and maintain a set monthly amount if her share was reduced either because he elected to take a disability waiver or for any other reason?

[2] Whether the trial court erred in its method of valuing and distributing Husband's military retirement plan?

[3] Whether the trial court violated the Equal Protection and Supremacy Clauses of the Constitution by ordering Husband to indemnify Wife for any reductions in her share of the military retirement pay?

* * *

_____

[2] The transcripts from the August 23, 2013 Master's hearing and the September 5, 2013, and December 30, 2013 arguments before the trial court are not included in the certified record.

[7] Whether the trial court erred in adopting credibility determinations of the Master regarding the ring, which were not supported by the record[?]

Appellant's Brief at 5.[3]

We apply the following standard in reviewing an equitable distribution order:

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

> **Biese v. Biese**, 979 A.2d 892, 895 (Pa.Super.2009). Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

---

[3] Appellant has withdrawn issues 4, 5, and 6. Appellant's Brief at 5.

*Childress v. Bogosian*, 12 A.3d 448, 455–456 (Pa. Super. 2011) (most internal citations and quotation marks omitted).

Husband's first three issues concern his Navy retirement pay and Veterans Affairs ("VA") disability pay, 38 U.S.C. §§ 1101–1163. These issues implicate the interplay of federal and state law. The Uniformed Services Former Spouses' Protection Act ("USFSPA" or "The Act"), 10 U.S.C. § 1408, refers to military retirement pay as "disposable retired pay" and defines that term as: "the total monthly retired pay to which a member is entitled less amounts which . . . (B) are deducted from the retired pay of such member as a result of . . . a waiver or retired pay required by law in order to receive compensation under title 5 or title 38 [(Veterans Affairs)]." 10 U.S.C. § 1408(a)(4)(B).[4] To prevent duplication of benefit payments, a retired service member may only receive VA benefits if he waives a corresponding amount of disposable retired pay. 38 U.S.C. §§ 5304–5305. The Act further provides that a service member's "disposable retired ... pay" may be treated "as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction." 10

---

[4] We note that the Master regularly refers to Husband's Navy retirement pay as a pension. However, Husband testified that, unlike a pension, which is paid until death, "the military retirement pay is a pay that can stop or start at any time. So basically if I go back on active duty, the pay stops." N.T., 10/12/12, at 161. We shall use the statutory term "disposable retired pay." 10 U.S.C. § 1408; *see also* Wife's Brief at 4–8 (discussing "disposable retired pay").

U.S.C. § 1408(c)(1). In Pennsylvania, disposable retired pay is classified as marital property, divisible upon divorce. *Major v. Major*, 518 A.2d 1267 (Pa. Super. 1986).

Both federal and Pennsylvania law provide that marital property does not include the portion of military retirement pay waived to receive VA disability benefits. In *Mansell v. Mansell*, 490 U.S. 581 (1989), the United States Supreme Court held, "[The Act] does not grant state courts the power to treat, as property divisible upon divorce, military retirement pay that has been waived to receive veteran's disability benefits." *Id.* at 594–595. Following the directive in *Mansell*, the Pennsylvania Superior Court stated in *Martin v. Martin*, 561 A.2d 1231 (Pa. Super. 1989), "[T]o the extent Pennsylvania's Divorce Code allows equitable distribution of VA disability retirement pay, or pay waived to receive disability pay, the Code is pre-empted by federal law and cannot be given effect." *Id.* at 1235. *See also Miller v. Miller*, 577 A.2d 205, 207–208 (Pa. Super. 1990) (discussing *Mansell* and *Martin*); *cf. Goodemote v. Goodemote*, 44 A.3d 74, 77 (Pa. Super. 2012) (holding that where VA disability payments were deposited and held in investment account, increase in value of investment that accrued during marriage is marital property subject to equitable division).

Husband first argues that the trial court violated federal and state law in distributing his disposable retired pay when it ordered him to indemnify

Wife and maintain a set monthly payment amount. Husband's Brief at 13.

According to Husband:

> This case is somewhat unique and may be a case of first impression, and not just in Pennsylvania. The vast majority of cases across the country dealing with waivers of military retirement, including Pennsylvania case law, involve property settlement agreements or consent orders. *See* <u>Hayward v. Hayward</u>, 868 A.2d 554 (Pa.Super. 2005).
>
> * * *
>
> Through an agreement Wife could have tried to protect herself with indemnity language and if Husband had agreed to it, then the court could certainly have enforced that agreement. Here, however, the parties were unable to negotiate a property settlement agreement. The court cannot attempt to secure for Wife indemnification regarding disability benefits of its own accord. *See* <u>Halstead [v. Halstead</u>, 596 S.E.2d 353, 355–356 (N.C. Ct. App. 2004)]; <u>Clauson [v. Clauson</u>, 831 P.2d 1257, 1264 (Alaska 1992)].

Husband's Brief at 20–21.

In response, Wife suggests that the trial court's result is consistent with "a growing number of cases" across the country. In those cases, even in the absence of an express indemnity agreement, courts have preserved the former spouse's share of the service member's disposable retired pay when the service member chooses to accept disability pay, "<u>by guaranteeing a specified payment</u> from the retirement pay or from any other source available." Wife's Brief at 11 (citing cases) (emphasis in original). In further support of her position, Wife relies on the following summary of the VA waiver issue penned by Colonel Mark Sullivan, U.S. Army, ret.:

- 7 -

> Numerous states have addressed the post-decree VA waiver situation. The large majority of states allow a judge to use equitable remedies to prevent a retiree from effecting a unilateral reduction of military retired pay granted to the other spouse in the settlement or divorce decree. <u>The claim of the military retiree that he is somehow protected by the USFSPA and the *Mansell* decision in his post-divorce election of VA benefits, and the resulting loss to the former spouse, should fail in most jurisdictions.</u>

Wife's Brief at 12–13 (quoting Mark E. Sullivan and Charles R. Raphun, *Dividing Military Retired Pay: Disability Payments and the Puzzle of the Parachute Pension*, 24 J. AM. ACAD. MATRIM. LAW 147, 159 (2011)) (emphasis in original).

Here, the Master calculated the marital portion of Husband's disposable retired pay for equitable distribution purposes as $1,090,539.94. Report and Recommendation, 6/25/13, at 14. No one disputes that this amount does not include the $871.00 per month of Husband's VA disability pay. For her share of Husband's disposable retired pay, Wife requested that the Master award a fixed dollar amount rather than a percentage. N.T., 12/19/12, at 160. Her reasoning was that:

> the VA [pay] is not considered an income and if his disability level increases [then] his retirement benefit from the Navy decreases in the percentage amount even though he would be receiving the same amount just in two different venues. That I could receive considerably less to nothing. . . . [T]he percentage would stay the same, but the amount that I would get –– it would be a smaller amount taken the percentage amount out of.

*Id.* In awarding Wife her share of Husband's disposable retired pay, the Master complied with Wife's request, as follows:

The single largest marital asset in this case is Husband's Navy [disposable retired pay]. It is from this course that Husband will need to make payment to Wife to effectuate the distribution of the marital estate. Wife has requested that these payments be made not as a percentage of the monthly [disposable retired pay], but as an actual dollar figure awarded to Wife on a monthly basis. After division of the marital property as set forth below, the payment from Husband to Wife will be $568,629.78. After subtracting from this the $1,428.52 credit awarded to Husband for monies deposited into the joint account and used by Wife after separation, this amount is reduced to $567,201.26, which is 47.652% of the present value of the Navy [disposable retired pay]. Wife will therefore be awarded 47.652% of the current monthly [disposable retired pay], or $911.11 monthly.

Report and Recommendation, 6/25/13, at 21–22.

The trial court analyzed the Master's recommendation as follows:

The Master did not err in regard to section [sic] 23 Pa.C.S.A. §3501 (a)(6). The Master noted Husband was collecting $871.00 per month in Veterans' Administration disability benefits. This was not held an asset subject to Equitable Distribution. The Master properly considered the disability benefits as income.

The Master did not fail to utilize the coverture fraction to establish the marital portion of Husband's Navy [disposable retired pay]. The Master valued the marital portion of Husband's Navy [disposable retired pay] as $1,090,539.94. This amount takes into consideration the marital coverture. The Master's well-reasoned report outlines that the Navy [disposable retired pay] is the parties' largest marital asset and the way in which the split was divided in order to offset other monies. The split of 47.652% to Wife is appropriate.

The Master through use of a fixed-dollar amount sought to indemnify Wife from any changes of Husband's income from Navy [disposable retired pay] to disability pay. The Master erred by not entering the award as a percentage to allow Wife the benefit of any cost of living adjustments to which Husband may become entitled. 23 Pa.C.S.A. § 3501(c) specifically allows for a spouse to be entitled to post separation enhancements. . . . .

- 9 -

Further the use of the fix-dollar award does not in this case necessarily protect Wife from an inequitable result. Should Husband's Navy [disposable retired pay] be reduced to a less than $911.11 monthly payment, Wife would not be able to enforce her order.

Trial Court Opinion and Order, 6/9/14, at 5–6.

Having corrected the Master's fixed-dollar-award error, the trial court added an indemnification provision regarding Wife's share of Husband's disposable retired pay:

If [Husband's] Navy [disposable retired pay] is reduced in any way which reduces the amount or share of retried [sic] pay to which [Wife] is entitled, such as the receipt of disability pay, then he will promptly make direct payments to [Wife] to indemnify her and hold her harmless from any reduction, costs or damages which she may occur [sic]. The minimum payment which Wife shall receive either directly from the Navy [disposable retired pay] and/or through direct payment from Husband is $911.11 per month, plus consideration of the associated COLAs.[5]

Trial Court Opinion and Order, 6/9/14, at 6. The trial court further analyzed the Master's recommendation and its resolution of Husband's first issue in its Pa.R.A.P. 1925(a) opinion to this Court:

The Master found the marital value of the Navy [disposable retired pay], excluding the current disability, to be $1,090,539.94. This represents over 80% of the total marital estate at $1,334,930.43. The Master determined Husband should be awarded 45% of the marital estate and Wife should be awarded 55% of the marital estate. In order to effectuate this split and after accounting for the split of other marital assets and credit to Husband, the Master determined the total payment due to Wife by Husband in equitable distribution was $567,201.26.

_____

5 Cost of Living Adjustments.

- 10 -

The Master initially ordered this payment to be made monthly from Husband's Navy [disposable retired pay] in the set dollar amount of $911.11 per month. The use of the set dollar figure was at the request of Wife due to her concern that Husband's benefit would be reduced by disability and consequently reduce her own entitlement. Husband through his Exceptions raised that the set amount was an error and the award should instead be entered as a percentage. This Court agreed and granted Husband's Exception, finding a percentage is the most equitable resolution.

Trial Court Opinion, 8/29/14, at 5.

Husband acknowledges that the trial court "properly deducted the disability benefits Husband currently receives from his military retirement and only awarded Wife a portion of his military retirement as it existed on the date of separation." Husband's Brief at 16. Husband complains, however, that the trial court improperly "circumnavigated the mandate of 10 U.S.C. § 1408 and Pennsylvania Law by giving Wife an indemnity for any reduction to the military retirement which occurred because of receipt of disability in the future." *Id.*

In response to Husband's argument, the trial court explained that:

[t]he indemnification language does not seek to nor does it impact Husband's protected Veteran's Disability Benefits. Disability Benefits are not subject to Equitable Distribution. The Master found that Husband owed to Wife a payment of $567,201.26 in Equitable Distribution. Instead of ordering a lump sum payment, this Court allowed for payments to be made monthly and directly from the Husband's Navy retirement benefits. In the event Husband['s] Navy retirement benefits do not cover this payment, he must use his outside funds. Throughout Husband's disability he has worked full time. Additional assets were awarded to Husband. Husband would be able to use either his income or his separate assets to meet the obligation under the indemnity clause. The Master's and this Court's determination represent an equitable distribution of the

- 11 -

parties' marital assets as accrued at the date of separation. The Court cannot speculate on an increase or decrease in the value of investment account[s] or any other asset over time. Before the Court today is that Wife is owed a payment of $567,201.26 to effectuate equitable distribution[;] potential future changes in Husband's status beyond COLAs does not and should not be allowed to affect the award.

Trial Court Opinion, 8/29/14, at 7.

Upon review, we acknowledge Husband's concerns. Nonetheless, we reject Husband's conclusion that the trial court's equitable distribution plan "is a direct contravention of Federal law and an attempt to do through a back door what the court cannot do outright." Husband's Brief at 22.

The Master and trial court recognized that, in order to effectuate an equitable distribution of the marital estate, Husband owed Wife a payment of $567,201.26, an obligation Husband does not refute. Calculating that amount as equaling 47.652% of the present value of Husband's disposable retired pay, the Master improperly awarded Wife her share as a fixed monthly payment of $911.11, thereby denying Wife the benefit of COLAs. Report and Recommendation, 6/25/13, at 22. Recognizing the Master's error, the trial court awarded Wife the $567,201.26 payment as a percentage of Husband's disposable retired pay. The trial court's use of the same monthly payment figure the Master proposed—$911.11—obfuscates the fact that Wife received a percentage of Husband's disposable retired pay, but is not otherwise flawed. Additionally, the trial court recognized that Husband's disposable retired pay was **one** source of income from which to

pay his monthly obligation to Wife. As the trial court observed, "Throughout Husband's disability he has worked full time. Additional assets were awarded to Husband. Husband would be able to use either his income or his separate assets to meet the obligation under the indemnity clause." Trial Court Opinion, 8/29/14, at 7.

Contrary to Husband's assertions, the challenged indemnification language does not impact his ability to waive his disposable retired pay for disability pay; nor does it subject Husband's disability pay to equitable distribution. The indemnification language merely directs Husband to use his disposable retired pay, less his disability pay, and other assets to provide Wife with her equitable share of the marital estate. If Husband's disposable retired pay decreases for whatever reason—including an increase in his disability pay—Husband may meet his monthly obligation to Wife with other assets. The monthly payment of $911.11 allows Husband to meet that obligation over time, rather than as a lump sum payment of $567,201.26.[6]

_____

[6] Husband asserts that he may one day "be living solely off of the disability payments. If he does not have any other assets, then the order will have an impact on his disability payments and run afoul of the Mansell decision, as it will effectively award Wife a portion of Husband's disability benefits." Husband's Brief at 22–23. We reject Husband's invitation to speculate as to future circumstances. Presently, Husband's disability pay is not subject to the equitable distribution order. If Husband's forecasted change of circumstances should occur, he could request modification of the order.

In sum, we conclude that the trial court entered an order of equitable distribution that effectuates economic justice between the parties and achieves a just determination of their property rights. *Biese*, 979 A.2d at 895. Moreover, we are persuaded by Wife's argument that our result is consistent with the trend in other jurisdictions to equitably distribute a service member's disposable retired pay in a manner that protects both the service member and the former spouse. *See* Wife's Brief at 9–18 (discussing cases). Thus, we discern no abuse of the trial court's discretion in distributing Husband's disposable retired pay with an indemnification provision for Wife.

Next, Husband complains that the trial court erred in its method of valuing and distributing Husband's disposable retired pay. Husband's Brief at 25. According to Husband, the trial court should have distributed his disposable retired pay according to 23 Pa.C.S. § 3501(c)(1). That provision reads as follows:

**(c) Defined benefit retirement plans**.--

\* \* \*

(1) In the case of the marital portion of a defined benefit retirement plan being distributed by means of a deferred distribution, the defined benefit plan shall be allocated between its marital and nonmarital portions solely by use of a coverture fraction. The denominator of the coverture fraction shall be the number of months the employee spouse worked to earn the total benefit and the numerator shall be the number of such months during which the parties were married and not finally separated. The benefit to which the coverture fraction is applied shall include all

- 14 -

postseparation enhancements except for enhancements arising from postseparation monetary contributions made by the employee spouse, including the gain or loss on such contributions.

23 Pa.C.S. § 3501(c)(1).

The trial court addressed this challenge succinctly:

The value of the marital portion of Husband['s] pension plan was determined using the coverture fraction. The Master considered the length of marriage during Husband's naval service. The trial court has "the authority to divide the award as the equities presented in the particular case may require." *Drake v. Drake*, 555 Pa. 481, 725 A.2d 717, 727 (Pa. 1999). The distribution does follow the requirements of the statu[t]e.

Trial Court Opinion, 8/29/14, at 8 (citing 23 Pa.C.S. § 3501(c)). We agree.

The record supports the trial court's conclusion that the Master applied the coverture fraction. Trial Court Opinion and Order, 6/9/14, at 5. Specifically, the Master found that Husband and Wife were married for twenty-three years and eight months.[7] Report and Recommendation, 6/25/13, at 3. Also, the Master determined that 91.619% of Husband's disposable retired pay is marital. *Id.* at 4. The Master further found that the $567,201.26 payment owed to Wife in equitable distribution is 47.652% of the present value of Husband's disposable retired pay. *Id.* at 22. Given the deference due to a Master's findings, *Childress*, 12 A.3d at 456, we conclude that the Master complied with the requirements of 23 Pa.C.S.

---

[7] The actual length of time from May 16, 1987, to February 14, 2010 is twenty-two years, eight months, and twenty-nine days.

§ 3501(c)(1). Accordingly, we further conclude that the trial court did not err in valuing and distributing Husband's disposable retired pay.

Husband's third question suggests that the trial court violated the Equal Protection and Supremacy Clauses of the state and federal constitutions by ordering him to indemnify Wife "if her percentage of Husband's disposable military retired pay is reduced '*for any reason*.' Wife would be guaranteed a payment for her lifetime but Husband would not, even though the court awarded the remaining military retirement benefit to Husband in equitable distribution." Husband's Brief at 30.[8] According to Husband:

> [T]he trial court created a difference in treatment between military members and their spouses. The trial court elected to protect spouses over the military members from forces beyond either party's control. This disparate treatment of the members violates equal protection principles because it impermissibly treats similarly situation [sic] persons (persons with an interest in military disposable retired pay) differently.

*Id.* at 32. In response, Wife observes that:

> the trial court's order, guaranteeing [Wife] a particular *amount* from [Husband's] retirement pay does not violate federal law or state law, and is completely within the court's power to effect an equitable distribution award. Because there is no violation of federal law or state law, the trial court does not "protect spouses over the military members" (Appellant's Brief, p. 32), and there is no violation of the constitutional right of equal protection.

---

[8]  Husband acknowledges that he is not challenging the constitutionality of 23 Pa.C.S. § 3105(c) or 10 U.S.C. § 1408, only the trial court's application of those statutes to the case at hand. Husband's Brief at 32.

- 16 -

Wife's Brief at 18 (citation omitted; emphasis in original).

The trial court also disposed of this challenge succinctly:

> Husband['s] third issue is similar to the first. "The Trial Court erred in violating the Constitutional Rights of Husband by not affording equal protection and refusing to uphold the supremacy of Federal law". The Court above addressed that Husband's Navy [disposable retired pay] is a marital asset under federal law and that his Veteran's Disability entitlements are not disturbed by this Court's ruling.

Trial Court Opinion, 8/29/14, at 8–9.

We have explained, "There is no simple formula by which to divide marital property; the method of distribution derives from the facts of the individual case." *Taper v. Taper*, 939 A.2d 969, 974 (Pa. Super. 2007) (citing *Gaydos v. Gaydos*, 693 A.2d 1368, 1376 (Pa. Super. 1997)). In making an equitable distribution of property, the court must consider all relevant factors. *See* 23 Pa.C.S. § 3502 (Equitable division of marital property). "The courts attempt to split property equitably, instead of equally, taking into consideration such factors as length of marriage, the contributions of both spouses, ages and health of each spouse." *Taper*, 939 A.2d at 974 (quoting *Drake v. Drake*, 725 A.2d 717, 721 (Pa. 1999)). "When reviewing an equitable distribution award, this court must consider the distribution scheme as a whole." *Id.* (citing *Wang v. Feng*, 888 A.2d 882, 887 (Pa. Super. 2005)).

Here, we agree with Husband that "[t]he Equal Protection clause guarantees equal application of the law." Husband's Brief at 30 (citations

omitted). However, after an exhaustive review of Husband's arguments and the certified record, we disagree with Husband's premise that the trial court treated the parties differently. In arriving at an equitable distribution recommendation, the Master examined each statutory factor set forth in 23 Pa.C.S. § 3502. Report and Recommendation, 6/25/13, at 15–20. Then, after correcting the Master's fixed-dollar-amount award to Wife, the trial court distributed Husband's disposable retired pay equitably based on the Master's section 3502 findings. Considering the distribution scheme as a whole, we discern no abuse of the trial court's discretion.

We also disagree with Husband's claim that the "inequity of the trial court's decision guarantees Wife the benefit of the percentage by including the COLAs, which can only be awarded through a percentage, but does not require Wife to take any detriment." Husband's Brief at 33. In support of his position, Husband forecasts a federal shutdown which would result in him not receiving disposable retired pay, but still having to pay his equitable distribution obligation to Wife. *Id.* at 33. Again, we decline to speculate about future circumstances during which Husband might be deprived of his disposable retired pay.

We reiterate that the trial court afforded Husband the opportunity to pay his equitable distribution obligation to Wife over time through monthly payments, rather than in a lump sum. Yet, Husband complains, "[M]athematically speaking, this could not possibly be equitable distribution.

At $911.11 per month, it would take . . . just under [fifty-two] years to pay the figure of $567,201.26." Husband's Brief at 29; *see also id.* at 29 n. 6 "($911.11 per month is $10,933.32 per year. $567,201.26 divided by $10,933 = 51.878227 years."). However, Husband fails to recognize that, in its discretion, the trial court could have distributed Wife's $567,201.26 award through a higher monthly payment by Husband. Thus, the trial court's scheme inures to Husband's benefit. Moreover, Husband is certainly free to pay more per month, thereby reducing the duration of his payment obligation to Wife.

Husband's final question concerns a 14-karat gold ring valued at $7,268.00. Husband testified that his father purchased the ring at the time of Husband's birth and that his mother presented him with the ring at his retirement, a few months after his father had passed away. N.T., 8/31/12, at 63–64. Wife took the position that the ring belonged to the parties' son, Dominick. *Id.* at 68–69. The Master listed the ring as non-marital property belonging to Dominick. Report and Recommendation, 6/25/13, at Attachment 3. Husband filed an exception to the Master's determination that the ring belonged to Dominick. Exceptions, 7/10/13, at ¶ 2.

After reviewing the Master's notes, the Court denied Husband's exception, stating:

> It is clear that the Master was presented with disputed testimony from both parties as to the owners of the above-listed items of property. The Master clearly did a thorough analysis of the personal property and made credibility determinations in

regard to whether the items belonged to Husband or belonged to the parties' child, Dominick. The Court finds that the Master had sufficient evidence to make the determinations that she made in regard to the . . . ring. As the trier of fact, the [c]ourt must give deference to the Master's determination in regard to credibility.

Trial Court Opinion and Order, 6/9/14, at 10. Initially, the trial court made its "determination without benefit of the transcript prior to the June 9, 2014 [hearing]." Trial Court Opinion, 8/29/14, at 9. Subsequently, having reviewed the transcripts:

> the [trial c]ourt [found] that the Master had sufficient evidence to make the determinations she made in regards to marital or non-marital property. [The trial court relied] on the credibility determination of the Master. The determination that the [ring was] non-marital does not equate to an award of the property to a third party, although [the court] mistakenly used the term "awarded." **The [c]ourt [did] not [order] any property be turned over to a third party; the [c]ourt simply made a determination as to marital or non-marital based on the determination of ownership.**

*Id.* (emphasis supplied).

> On appeal, Husband argues as follows:

> Wife never testified about the ring. Although her attorney proffered a statement, such is not testimony. Husband specifically presented testimony as to the ring. Thus, the credibility determination that the ring was intended for the parties' son and Wife's assumption that the son would get the ring [were] not supported by the record.

Husband's Brief at 37 (internal citations omitted; citing N.T., 8/31/12, at 68–69). Husband does not challenge the trial court's ultimate finding that the ring was non-marital, just the basis for that finding.[9]

Upon review, we observe that the record supports Husband's assertion. During the three days of hearings, Wife did not, in fact, testify about the ring; rather, her counsel informed the trial court of Wife's position. N.T., 8/31/12, at 68–69. Yet, the trial court "made a determination as to marital or non-marital based on the [Master's] determination of ownership," which, in turn, was based on the Master's credibility determination. Trial Court Opinion, 8/29/14, at 9.

This Court will not reverse credibility determinations as long as they are supported by the evidence. *Childress*, 12 A.3d at 455 (citation omitted). Moreover, this Court may affirm the trial court's decision on any valid basis, as long as the court came to the correct result. *Wilson v. Transport Ins. Co.*, 889 A.2d 563, 577 n. 4 (Pa. Super. 2005). Here, given the lack of Wife's testimony regarding the ring, the Master's acceptance of Wife's position as credible and determinative of ownership is not supported

---

[9] Wife retorts, "[Husband] cannot now claim that Wife did not testify when it was he who specifically refused to provide a transcript to the trial court, and instead asked the trial court to rely on the master's notes." Wife's Brief at 19. This argument ignores the fact that the trial court subsequently reviewed the transcripts and determined that "the Master had sufficient evidence to make the determinations she made in regards to marital or non-marital property." Trial Court Opinion, 8/29/14, at 9.

by the record. Consequently, the trial court's reliance on the Master's credibility determination is not supported. Husband's unrebutted testimony as to the pre-marital origin of the ring supports his claim of ownership. More importantly, Husband's testimony also supports the trial court's ultimate determination that the ring was non-marital property. N.T., 8/31/12, at 63–64, 71–72. Thus, we reject the Master's unsupported determination of ownership and the trial court's reliance thereon. However, we affirm the trial court's ultimate determination that the ring was non-marital property based on the testimony that was presented.[10]

Lastly, we address Husband's complaint that the Master and trial court erred by imposing the equitable distribution award through a QDRO versus DRO.[11] Husband's Brief at 21, 26, 27, 33. We note, however, that Husband

_____

[10] In doing so, we note our agreement with the trial court that it "did not order any property be turned over to a third party." Trial Court Opinion, 8/29/14, at 9.

[11] The Pennsylvania Commonwealth Court has distinguished these terms, as follows:

> Generally, a qualified domestic relations order, or "QDRO," is defined as:
>
> > a domestic relations order which creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under the plan. To be "qualified," the order must contain certain required information and may not alter the amount or form of plan benefits.

*(Footnote Continued Next Page)*

did not raise this issue in his Pa.R.A.P. 1925(b) Statement of Errors Complained of on Appeal or in his Statement of Questions Presented. Rule 1925(b) Statement, 7/9/14; Husband's Brief at 5. Thus, it is waived. **See** Pa.R.A.P. 302(a) ("**General rule.** Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); **Green v. Green**, 69 A.3d 282 (Pa. Super. 2013) (applying Rule 302(a) where Husband failed to object to trial court's use of wife's exhibit which was not formally admitted).

In sum, the trial court did not abuse its discretion in distributing the marital estate. Husband's contrary claims do not warrant relief.

Order affirmed.

---

*(Footnote Continued)*

> **Berrington v. Berrington**, 534 Pa. 393, 397 n. 3, 633 A.2d 589, 591 n. 3 (1993), quoting **Wilder, Mahood, and Greenblatt**, Pa. Family Law Practice and Procedure (2d ed), § 14-10. A DRO is:
>
> > a judgment, decree or order, including approval of a property settlement agreement by the court, which relates to the provision of child support, alimony payments or **marital property rights of a** spouse, **former spouse**, child or other dependent of a plan participant and is made pursuant to a state domestic relations law.
>
> **Id.** at n. 4, 633 A.2d at 591 n. 4.

**Maloney v. Maloney**, 754 A.2d 36, 38 n.3 (Pa. Cmwlth. 2000) (emphasis supplied).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/26/2015</u>