J-A06005-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MELISSA LYNN RHODES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRAVIS WAYNE RHODES | : | No. 865 WDA 2023 |

Appeal from the Order Entered June 26, 2023
In the Court of Common Pleas of Blair County at No(s):  2020 GN 1040

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

MEMORANDUM BY LAZARUS, P.J.:          **FILED:  September 25, 2024**

Melissa Lynn Rhodes (Wife) appeals from the order, entered in the Court of Common Pleas of Blair County, granting her complaint in divorce from Travis Wayne Rhodes (Husband) and equitably distributing the marital estate. Upon review, we affirm in part, reverse in part, and remand to the trial court for additional development of the record and a corrected equitable distribution calculation consistent with this decision.

The parties were married on August 8, 2009, and separated on or about April 13, 2020.  The parties are the parents of one child (born 01/2011).  Wife filed for divorce on April 17, 2020.  The trial court appointed a divorce master who conducted hearings on September 20 and December 13, 2021. Subsequently, the master filed her preliminary report and recommendations as to the distribution of the marital estate.  Wife filed exceptions on February 14, 2022, after which Husband filed a petition to strike exceptions.  Husband's

petition was denied and both parties filed briefs in support of their positions regarding Wife's exceptions. The Honorable Wade A. Kagarise heard argument on the exceptions on April 27, 2023, and, on June 26, 2023, issued an order and opinion adopting the master's report and recommendations, except for one exception raised by Wife.[1]

The June 26, 2023 order: granted all rights to the real estate located on Flaugh Lane in East Freedom to Wife and made Wife responsible for satisfaction of the mortgage securing the Flaugh Lane property; granted Wife all rights to the Freedom White Tail Deer Farm business, including inventory, equipment, and debts; allowed Wife and Husband to retain sole rights to their respective retirement accounts; granted Wife sole rights to the balance of a joint checking account, as well as a checking and savings account in her name; granted Wife the rights of the parties' 2019 income tax refund and 2020 stimulus payment; made Wife and Husband individually responsible for several outstanding payments and loans;[2] maintained the parties' sole

_____

[1] The trial court agreed with Wife's exception raised below "that an error was created by the divorce master in the findings of fact under dependency exemption/child tax credit by awarding separately the child tax credit between the parties." **See** Trial Court Opinion, 6/26/23, at 7 (unnecessary capitalization omitted). The court determined that Internal Revenue Service (IRS) regulations should govern tax credits and exemptions and that the court should not "wade into this issue . . . . and hold[s] that[,] effective with the 2023 tax year[,] applicable law should govern the ability of parents to seek those tax credits and exemptions." **Id.** at 14.

[2] Wife is responsible for several credit card balances, the Verizon bill, a loan with First Commonwealth Bank, and a loan with Altoona First Savings Bank. *(Footnote Continued Next Page)*

responsibility for respective non-marital loans; allowed Wife to retain sole ownership of a 2019 GMC Acadia and the associated car loan; granted Husband sole ownership of a 2008 Toyota Corolla; assigned ownership of various items of property including collectors' items to Husband and Wife; and ordered Wife to pay a financial settlement to Husband in the amount of $117,632.05. **See generally** Order, 6/26/23. On July 24, 2023, Wife filed a motion for reconsideration, which was denied by operation of law.[3]

Wife filed a timely notice of appeal[4] and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Wife raises the following issues for our review:

_____

Husband is responsible for two loans with Northwest Bank, medical bills, and a Meadows Center bill. **See** Order, 6/26/23, at ¶ 8.

[3] "An order granting reconsideration will only be effective if it is made and entered on the docket before expiration of the applicable appeal period, 30 days from the entry of the order which is the subject of the reconsideration motion, and if it states that it is expressly granting reconsideration." **Schoff v. Richter**, 562 A.2d 912, 913 (Pa. Super. 1989); **see also** Pa.R.A.P. 1701 (trial court must expressly grant reconsideration within 30 days of entry of order). "Failure to 'expressly' grant reconsideration within the time set by the rules for filing an appeal will cause the **trial court to lose its power to act on the application for reconsideration**." **Commonwealth v. Moir**, 766 A.2d 1253, 1254 (Pa. Super. 2000) (quotation marks and citation omitted; emphasis added).

Because the court did not take any action on the motion, it was deemed denied at the expiration of 30 days from the entry of the order, on July 26, 2023.

[4] "[A]lthough a party may petition the court for reconsideration, the simultaneous filing of a notice of appeal is necessary to preserve appellate rights in the event that either the trial court fails to grant the petition expressly
*(Footnote Continued Next Page)*

I. Did the trial court err and/or abuse its discretion by affirming the master's recommendation and ordering a 50/50 distribution of the marital estate, when a proper application of the equitable distribution factors set forth in 23 Pa.C.S.[A.] § 3502 would indicate that economic justice would be better served through a 55/45 division of the assets in Wife's favor?

II. Did the trial court err and/or abuse its discretion by affirming the master's recommendation [and] not subtracting the mortgage balance with Altoona First Savings Bank from the value of the marital residence?

III. Did the trial court err and/or abuse its discretion by affirming the master's recommendation [and] awarding Wife's pre[]marital 2008 Toyota Corolla to Husband?

IV. Did the trial court err and/or abuse its discretion by affirming the master's recommendation [and] failing to give Wife proper credit for expenses she paid and labor she performed to preserve the deer farm and herd which was a marital asset?

V. Did the trial court err and/or abuse its discretion by affirming the master's recommendation [and] failing to properly account for and divide the marital debt from the non-marital debt incurred by Husband post-separation?

VI. Did the trial court err and/or abuse its discretion by affirming the master's recommendation [and] failing to place an appropriate value on the deer herd that was quarantined by the state?

VII. Did the trial court err and/or abuse its discretion by affirming the master's recommendation [and] crediting Wife with receiving the value of assets sold by Husband when he retained the proceeds from the assets that were sold?

---

within 30 days, or it denies the petition." **Moir**, 766 A.2d at 1254. Moreover, "[i]f the court does not grant the motion for reconsideration within the time permitted, the time for filing a notice of appeal will run as if the motion for reconsideration had never been presented to the court." Pa.R.C.P. 1930.2(b).

Here, Wife filed a protective notice of appeal on July 26, 2023, before the expiration of time for the trial court to grant or deny her motion for reconsideration.

VIII. Did the trial court err and/or abuse its discretion when it affirmed the master's recommendation [and] fail[ed] to credit Wife with marital debt she paid from monies taken from joint marital accounts?

IX. Did the trial court err and/or abuse its discretion by improperly crediting to Wife $2,900.00 from the stimulus money when the parties stipulated that they received a $4,200.00 stimulus check and they divided it[,] with Wife receiving $2,800.00 and Husband receiving $1,400.00?

X. Did the trial court err and/or abuse its discretion by affirming the master's recommendation in its Findings of Fact, paragraph number 8 under "Real Estate[,]" where the master refused to give Wife any credit or deduction from the value of the marital residence as a result of the need for the removal of accumulation of debris on the property.

Appellant's Brief, at 8-11 (unnecessary capitalization omitted).

Wife's claims all stem from the equitable distribution of marital property.

We apply the following standard in reviewing an equitable distribution order:

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence. We are also aware that a master's report and

recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has [had] the opportunity to observe and assess the behavior and demeanor of the parties.

*Morgante v. Morgante*, 119 A.3d 382, 386-87 (Pa. Super. 2015) (citations omitted).

We do not evaluate the propriety of the distribution order upon our agreement with the court's actions[,] nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of the 23 Pa.C.S.A. § 3502(a) factors for consideration in awarding equitable distribution.[5] If we fail to find an abuse of discretion, the order must stand.

*Lee v. Lee*, 978 A.2d 380, 383 (Pa. Super. 2009) (citation and brackets omitted).

Wife first claims that the trial court erred by ordering a 50/50 distribution of the marital estate, rather than a 55/45 distribution which, Wife argues, is a proper application of the equitable distribution factors set forth in 23 Pa.C.S.A. § 3502. Specifically, Wife argues that the trial court failed to consider that Wife is the primary custodian of the parties' child, Wife's vocational skills, and that Wife contributed more to the marital property. *See* Appellant's Brief, at 43-45.

We have long held that the trial court has broad discretion in determining an equitable distribution award, *Morgante*, *supra*, and the ability to "equitably divide, distribute[,] or assign, in kind or otherwise, the

---

[5] While the trial court is afforded great discretion in fashioning an equitable distribution order, the Divorce Code, 23 Pa.C.S.A. §§ 3101-3106, mandates the that the court consider several factors to effectuate "economic justice" between the parties. 23 Pa.C.S.A. § 3102(a)(6); *id.* at 3502(a).

marital property between the parties in such proportions and in such manner as the court deems just after considering all relevant factors." *Anzalone v. Anzalone*, 835 A.2d 773, 785 (Pa. Super. 2003) (citation omitted). When "assessing the propriety of an equitable distribution scheme, our standard of review is whether the trial court, by misapplication of the law or failure to follow proper legal procedure, abused its discretion." *Id.* (citation omitted). We look to the circumstances of the case, the conclusions drawn by the trial court, the provisions of 23 Pa.C.S.A. § 3502, and the objectives of the Divorce Code to "effectuat[e] economic justice between the parties and achiev[e] a just determination of their property rights." *Morgante*, *supra*; *see also Anzalone*, 835 A.2d at 785 (same); *Middleton v. Middleton*, 812 A.2d 1241, 1247 (Pa. Super. 2002) (same). Finally, the trial court has "the authority to divide the award as the equities presented in the particular case may require." *Drake v. Drake*, 725 A.2d 717, 727 (Pa. 1999).

Instantly, the trial court provided the following explanation for its decision to order a 50/50 distribution of the marital estate:

> The court believes that the divorce master correctly considered the factors outlined in the Divorce Code in evaluating the distribution of marital assets. After an independent review of those factors, this court believes that a 50/50 distribution is appropriate and therefore the court adopts the Master's Report and Recommendation insofar as that Report and Recommendation suggests that a 50/50 division of marital assets is warranted.

Trial Court Opinion, 6/26/23, at 12 (unnecessary capitalization omitted). The court further stated that it believed the recommendation for equitable distribution properly considered the factors set forth in section 3502 and that

the marital property was divided in a "compassionate and reasonable manner that effectuates justice between the parties." *Id.*

Our review of the master's report indicates that the master considered each of the factors set forth in section 3502. *See* Master's Report & Recommendation, 2/9/22, at 20-24. The master weighed, *inter alia*, Wife's good physical and mental health, in contrast to that of Husband, *id.* at 21, Wife's possession of the home and deer farm, *id.* at 22, Husband's failure to pay certain loans post-separation, *id.* at 23, and the fact that Wife has custody of the parties' child. *Id.* at 24. The parties disputed and disagreed with the monetary valuations of numerous assets; however, the trial court made a credibility determination that Husband's testimony was generally more credible than Wife's testimony. *See* Trial Court Opinion, 6/26/23, at 12-13. As credibility determinations are within the province of the trial court, and the court's determinations are supported by the record, we do not find that the trial court misapplied the law or that the trial court's "judgment [] was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will," *Morgante*, 119 A.3d at 387, and thus we will not disturb either the master's or trial court's determination with respect to a 50/50 division of property.

Wife's second claim is that the trial court erred by not subtracting the Altoona First Savings Bank mortgage owed on the marital residence from the value of the marital residence. Typically, the value of property within the marital estate is calculated by determining the current value and subtracting

any encumbrances. *See Mundy v. Mundy*, 151 A.3d 230, 236 (Pa. Super. 2016).

Our review of the master's report and recommendation shows that the master, in her determination of Wife's 50% share, credited the value of the Flaugh Lane home **and** the balance of the Altoona First Savings Bank Mortgage—including the mortgage as an asset, rather than a debt.[6] **See** Master's Report & Recommendation, 2/9/22, at 25. Therefore, master's calculation of the 50/50 distribution is incorrect. On remand, the master must reassess the marital assets and debts, particularly with respect to the home and mortgage.

Wife's third claim is that the trial court erred in awarding Husband her 2008 Toyota Corolla, which she claims was "clearly purchased" by her prior to the marriage. **See** Appellant's Brief, at 56. Wife argues that according to section 3501(a), property acquired prior to the marriage is excluded from consideration as a marital asset. **Id.** at 55; **see** 23 Pa.C.S.A. § 3501(a). Husband, however, argues that the court did not err because he contributed to the car loan for several years, it was bought only shortly before the marriage, and he used the car regularly for work purposes until it was

---

[6] In our independent review, we were unable to reconcile the master's calculation of Wife's distribution of $113,361.07. There appears to be a calculation error based on the list of items and numbers provided in the master's report. **See** Master's Report & Recommendation, 2/9/22, at 25. We direct the master to correct the distribution calculations on remand.

damaged in an accident.[7]  **See** Appellee's Brief, at 28.  Wife testified at the hearing as follows:

> Q:  And just for the purposes of the record[,] it was discussed that there's another vehicle in your possession, correct?
>
> [Wife]:  Yes.
>
> Q:  And that is a 2008 Corolla?
>
> [Wife]:  Yes.
>
> > By [Appellant's] Attorney []:  And I believe everybody stipulated at the prehearing that this is premarital; would that be accurate[?]
> >
> > By [Appellee's] Attorney []:  I [] was not present at that; however, it is my understanding that **the balance of the loan was paid off during the course of the marriage**. There was [] a significant balance on the loan.

N.T. Divorce Master Hearing, 9/20/21, at 29 (emphasis added).  Husband testified regarding the Corolla as follows:

> Q:  Now [] we have as a debt a Geico bill. . . .  It's a 2008 Toyota Corolla.
>
> [ . . .]
>
> [Husband]: [**T**]**he Toyota Corolla again was my work car**.

N.T. Divorce Master Hearing, 9/20/21, at 188-89 (emphasis added).

While Wife may have initially owned the vehicle and, thus, would normally be considered non-marital, the master found credible Husband's testimony that he made payments throughout the marriage to pay off the car

---

[7] The car loan was paid off by both parties in or about 2013.  The vehicle was involved in an accident in November 2019, after which Wife received an insurance settlement of $4,089.98.  **See** Master's Report & Recommendation, 2/9/22, at 10.

loan.  *See* N.T. Divorce Master Hearing, 9/20/21, at 188-90; Master's Report & Recommendation, 2/9/22, at 10.   Husband's payment of the car loan increased the "value" of the vehicle, by reducing the amount owed to a creditor, and that increase in value becomes subject to equitable distribution. *See* 23 Pa.C.S.A. §§ 3501-3502; *but cf. Lee*, 978 A.2d at 384-85, 388-89 (record did not support trial court determination that husband and wife contributed equally to mortgage on home purchased by wife before marriage; matter remanded to trial court to reexamine contributions and improvements to marital home).  Thus, we accept the trial court's credibility determination and conclude that the record supports the court's finding that Husband significantly contributed to the value of the vehicle.  Accordingly, the trial court did not abuse its discretion or err when it awarded the Toyota Corolla to Husband. *See Morgante*, *supra*; *Lee*, *supra*.

Wife's fourth claim is that the trial court erred by failing to give Wife sufficient credit for her expenses and labor in preserving the deer farm and herd, which was a marital asset.  Wife specifically points to her testimony and evidence regarding her labor, expenses, and challenges to maintain the deer herd.  *See* Appellant's Brief, at 57-59.  Wife argues that the master erred when she determined that the "expenses were incurred after the date of separation" and did not give any credit to Wife.   Master's Report & Recommendation, 2/9/22, at 6.

In our review of her claim, Wife has provided no statute or caselaw to support her assertion with respect to her efforts **post-separation**.  Thus, we

determine Wife has waived this claim. ***See Lackner v. Glosser***, 892 A.2d 21, 29-30 (Pa. Super. 2006) ("arguments . . . not appropriately developed are waived[,] . . . includ[ing] those where the party has failed to cite any authority in support of a contention") (citations and quotation marks omitted); ***see also*** Pa.R.A.P. 2119(a) ("The argument . . . shall have at the head of each part— in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.").

Wife's fifth claim is that the trial court erred by failing to properly account for and assign the marital debt from the non-marital debt incurred post-separation. Wife argues that the master misassigned as marital debts that were incurred by Husband post-separation. ***See*** Appellant's Brief, at 64. In particular, Wife points to a "significant [increase in] indebtedness" by Husband beginning in 2019, including two consolidation loans used to pay off marital debt. ***Id.*** at 63. Wife states that Husband incurred new debts between the parties' April 13, 2020 separation and the September 20, 2021 master's hearing, and that she should not be responsible for those debts. ***Id.***

We have held the following with respect to marital debt:

> [W]hether the debt is marital or not is of significance, but not ultimately determinative of who shall be responsible for its repayment. Rather, **the ultimate distribution of either assets or liabilities is to be based on the circumstances surrounding the acquisition of the debt or asset, along with all other factors relevant to fashioning a just distribution**.

***Mundy***, 151 A.3d at 239 (quotation marks, citations, and ellipses omitted; emphasis added).

Our review of the record supports the trial court's determination with respect to the assignment of numerous marital debts. In particular, the Altoona First Savings Bank loan, which Wife states was used to pay off Bank of America debt, was disbursed in December 2019, before the parties separated. Moreover, the record indicates that the loan was used to pay a Bank of America debt incurred during the marriage. Wife has not specified what additional debts were incurred after the disbursement of the loan and after the parties separated. Thus, we cannot discern any error on the part of the trial court.[8]

Wife's sixth claim is that the trial court erred by failing to place an appropriate value on the deer herd that was quarantined by the state. Wife argues that the court erred by valuing the deer inventory at $28,000.00 and accepting Husband's testimony that the deer were worth that much, without doing an individual valuation for each deer. ***See*** Appellant's Brief, at 65. In addition, Wife suggests that the court should only have considered the value of seven deer, as two died after the date of separation and one belonged to the parties' child. ***Id.*** at 65-66. Wife also posits that because the farm was put on a quarantine as of August 6, 2020, the value of the deer is impacted

_____

[8] We note that, upon remand, this calculation may change after the trial court or divorce master reassesses the marital debts and assets due to the court's error in including the home mortgage as an asset.

because Wife cannot sell or transfer the deer until September 19, 2025. *Id.* at 66.

> The Pennsylvania Divorce Code does not specify what date marital property should be valued for purposes of equitable distribution. Although the Code establishes the date of separation as the demarcation point to identify marital property, it does not specify the time when marital assets must be valued. Absent a specific guideline, trial courts are given discretion to choose a date of valuation [that] best provides for "economic justice" between the parties.

*Smith v. Smith*, 653 A.2d 1259, 1270 (Pa. Super. 1995) (citation omitted).

Here, the trial court and master assigned the date of separation for determination of valuation of the marital estate, and, therefore, of the deer. *See* Master's Report & Recommendation, 2/9/22, at 5-7. Thus, the fact that two deer died and the herd was placed under quarantine **after** the date of separation did not factor into the court's valuation. *Smith*, *supra*. The trial court accepted the master's credibility determination and concluded that Husband's testimony with respect to the value of the deer was more credible than Wife's testimony. *See* Trial Court Opinion, 6/26/23, at 12-13. Credibility determinations are within the province of the trial court, and we do not reverse absent a lack of support in the record. *See Morgante*, *supra*. In addition, Wife, in her brief, failed to show that the trial court's decision was an abuse of discretion, that it "misapplied [the law] or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will[.]" *Id.* at 387. Thus, Wife's claim fails.

Wife's seventh claim is that the trial court erred by crediting Wife with receiving the value of certain assets sold by Husband. Wife specifically points to the sale of two assets: the John Deere Gator ATV ($6,100.00) and the Suzuki 400 four-wheeler ($2,200.00). *See* Appellant's Brief, at 69-72.

A review of the record indicates that during the first hearing, held September 20, 2021, Husband testified that after he sold the ATV, he gave half of the proceeds to Wife. *See* N.T. Divorce Master Hearing, 9/20/21, at 181. However, during the second hearing, Husband testified that he gave the entirety of the proceeds to Wife. *See id.*, 12/13/21, at 263-64. Regarding the four-wheeler, Husband's only testimony was that the proceeds of the sale were given to Wife to pay off the vehicle's loan. *See id.*, 9/20/21, at 195.

Again, as we stated with regard to Wife's sixth claim, the trial court made a determination that Husband's testimony was more credible than Wife's testimony. *See* Trial Court Opinion, 6/26/23, at 13. Moreover, we "consider the distribution scheme as a whole[,]" *Morgante*, 119 A.3d at 387, and thus do not find error with the trial court's decision to give credit to Husband's testimony during the second hearing, rather than the first hearing, over Wife's testimony. Thus, Wife fails to show that the trial court's decision was an abuse of discretion, and this claim fails. *Morgante*, *supra*.

Wife's eighth claim is that the trial court erred by failing to give her credit for marital debt payments that were made from funds in joint marital accounts. Specifically, Wife contends that the master "double-dipped with regard to the money that was deposited into the First Commonwealth Bank

account[,]" by double-counting $11,000.00 from the 2019 income tax return as both (1) used to pay for marital debt and (2) used personally by Wife. *See* Appellant's Brief, at 73-74.

With respect to this claim, the master's report indicates that Wife made two withdrawals from the First Commonwealth Bank joint checking account— $18,000.00 on October 28, 2019, and $11,000.00 on February 21, 2020—and deposited those sums into a savings account in Wife's name only. *See* Master's Report & Recommendation, 2/9/22, at 14. The master's report also indicates that Husband and Wife received an income tax refund on April 15, 2020, for the 2019 tax year, in the amount of $13,594.00, and that Wife retained these funds. *Id.*

We have combed the record and can find no support for the master's determination that Wife retained the tax refund, issued in 2020, for the 2019 tax year. *See*, *e.g.*, N.T. Divorce Master Hearing, 9/20/21, at 87-88, 92, 149-151; *id.*, 12/13/21, at 291-92; Defense Ex. 19; Plaintiff Ex. 31. Thus, we remand to the trial court for the limited purpose of taking additional evidence as to the receipt and use of the 2019 tax refund.

Wife's ninth claim is that the trial court erred when it credited Wife with the sum of $2,900.00 from stimulus money, where the parties stipulated that the value of the stimulus check was $4,200.00, and it was divided with Wife receiving $2,800.00 and Husband receiving $1,400.00. *See* Appellant's Brief, at 75-76. Husband argues that Wife is mistaken and that there were two stimulus checks at issue: one from 2020 and one from 2021. *See* Appellee's

Brief, at 35-36. Husband avers that the 2020 stimulus check was for $2,900.00 and that Wife had control of those funds as Husband was no longer in the home at the time that money was deposited, and that the 2021 stimulus check was for $4,200.00 and divided as Wife stated. *Id.*

Our review of the record indicates that Husband and Wife received federal stimulus checks in both 2020 and 2021. *See* N.T. Divorce Master Hearing, 9/20/21, at 30-31. Regarding the 2021 check, the parties agreed and stipulated that the $4,200.00 check was sent to Husband and split as set forth above. *Id.* Those funds, received after the date of separation, were not included as part of the equitable distribution and we, therefore, discern no error by the trial court.

The 2020 check, in the amount of $2,900.00, was directly deposited in the First Commonwealth Bank joint savings account on April 15, 2020. *See id.*; *see also* Defense Ex. 4. That same day, $1,700.00 was transferred to Wife's savings account. *See* Defense Ex. 4. Additional payments were made in the following days to pay outstanding debts and there is an unaccounted-for cash withdrawal of $1,000.00 on April 17, 2020. There was no testimony as to the cash withdrawal. Wife testified that she withdrew the $1,700.00 to pay outstanding bills, which the master accepted and made a finding that Wife made payments totaling $1,259.84. *See* Master's Report & Recommendation, 2/9/22, at 19. The master also gave Wife credit for those payments. *Id.* at 26.

Wife had control over the joint savings account post-separation, and, thus, had control over the 2020 stimulus check that arrived just two days after the date of separation. *See* N.T. Divorce Master Hearing, 9/20/21, at 30-31, 156. Considering the distribution scheme "as a whole[,]" *Morgante*, 119 A.3d at 387, we find no error with the trial court's determination that Wife received the 2020 tax stimulus check and that she also was entitled to credit for her payments post-separation. Wife fails to show that the trial court's decision was an abuse of discretion, and this claim fails. *Morgante*, *supra*.

Wife's tenth and final claim is that the trial court erred when it refused to give Wife any credit or deduction from the value of the marital residence for the amount she estimates it will cost her to remove accumulated debris on the marital property. Wife argues that Husband was "dumping" items in various places on the farm and did not clean up prior to leaving the residence, pursuant to the protection from abuse order in place. *See* Appellant's Brief, at 77. Wife further argues that the trial court erred when it did not give her credit for the estimate to have the debris removed, approximately $11,983.00. *Id.* at 78.

Here, Wife has provided no statute or caselaw to support her assertion that her expenses **post-separation** should be considered in the equitable distribution of marital property. *See id.* at 77-79. Thus, we determine Wife has waived this claim. *See Lackner*, *supra* (arguments not appropriately developed are waived); *see also* Pa.R.A.P. 2119(a).

Accordingly, we affirm in part and reverse in part, and remand to the trial court for: (1) additional testimony and record development with respect to the receipt and use of the 2019 tax refund; (2) recalculation of marital assets/debts, now counting the home mortgage as a debt; and (3) recalculation of the equitable distribution as necessary following the outcome of (1) and (2).

Order affirmed in part and reversed in part. Case remanded for further proceedings in accordance with this decision. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 9/25/2024