J-S12006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TRACY S. NEWCOMER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICHARD C. NEWCOMER | : | |
| | : | |
| Appellant | : | No. 1382 MDA 2017 |

Appeal from the Order Entered August 3, 2017
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s):  S-1901-2013

BEFORE:  LAZARUS, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                      **FILED APRIL 12, 2018**

Richard C. Newcomer ("Husband") appeals from the order, entered in the Court of Common Pleas of Schuylkill County, distributing the parties' marital property and ordering Tracy S. Newcomer ("Wife") to pay Husband alimony in the amount of $1,473.84 per month until December 31, 2017.[1] After our review, we affirm based on the opinion authored by the Honorable Jacqueline L. Russell.

The parties married in 1998 and separated in 2013.  They have three minor children, ages 17, 15 and 12.  The parties share physical custody of the two youngest children; Wife has primary physical custody of the oldest child. None of the children has special needs.   At the time of the hearings before

_____

[1] Husband has been receiving alimony *pendente lite* (APL) since August 2014; upon divorce the APL award converted to alimony.

the master, in October and December of 2016, Wife was 50 years old and Husband was 47 years old.

Prior to the marriage, Wife obtained a Bachelor's Degree in Business Administration and a Master's Degree in Human Resources; she is employed at Country Meadows Retirement Community. Wife earns approximately $140,000.00 per year. Husband has taken some college level classes in horticulture; he has been self-employed as a landscaper since 1993. Husband can operate a bucket truck, a backhoe, a chipper and a stomper. Husband also has an active commercial driver's license (CDL). Husband's 2015 Federal Income Tax Return for his landscaping business showed gross receipts of $35,455.00 for his landscaping and snowplowing business, and other income, including alimony, of $22,237.00.[2]

The parties stipulated to the value of the marital assets. The master held hearings on October 10, 2016, December 6, 2016, and December 28, 2016. On April 18, 2017, the master issued his report and recommendation. Both parties filed exceptions, and, on August 3, 2017, the trial court entered an order, adopting the master's findings and recommendations, and distributing the marital property as follows: 51% to Husband ($422,521.00) and 49% to Wife ($420,681.00). The court also ordered Wife's alimony payment to Husband continue to December 31, 2017. Husband appealed.

---

[2] An interim order entered on August 27, 2014, determined that Husband's monthly net income was $833.15 and Wife's monthly net income was $7,928.37.

Both Husband and the trial court have complied with Pa.R.A.P. 1925. Husband raises the following issues for our review:

1. Whether the lower court erred in setting forth an equitable distribution scheme that does not reflect a proper consideration of the facts as applied to the factors set forth in the Pennsylvania Divorce Code, and, instead, reflects bias in favor of Wife?

2. Whether the lower court erred in awarding alimony only until December 31, 2017?

3. Whether the lower court erred in failing to award attorney fees and costs to Husband?

4. Whether the lower court erred in failing to set forth the basis of, and reasoning behind, its equitable distribution scheme?

5. Whether the lower court erred in discriminating against Husband?

Appellant's Brief, at 7.

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Moreover, it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the

evidence. We are also aware that a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties.

*Morgante v. Morgante*, 119 A.3d 382, 386-87 (Pa. Super. 2015) (quoting

*Childress v. Bogosian*, 12 A.3d 448, 455-56 (Pa. Super. 2011) (internal

citations and quotation marks omitted)).

Essentially, Husband argues that he should continue receiving alimony beyond December 31, 2017, in light of the disparity in the parties' incomes and in light of the fact that he suffers from back issues that limit his ability to work. The trial court noted, however, that Husband offered no medical testimony to support work restrictions for his back and takes no medication. Husband also argues that he requires approximately $76,000.00 for tuition because he intends to acquire a degree in mechanical engineering so that he can obtain a job that does not require physical labor. The court noted that the master found Husband was underemployed and that Husband's testimony was simply not credible. The court accepted the master's determination with respect to Husband's credibility. *See Morgante*, *supra*.

Further, the court reviewed the statutory factors, applied them to the parties' stipulations and the master's findings, and set forth its reasoning for the equitable distribution order. The trial court listed the factors a court must consider in the implementation of an equitable distribution scheme and in the award of alimony, and evaluated the master's reference to them and all

relevant factual information assigned to them. Trial Court Opinion, 8/3/17, at 9-12.

We also agree with the court that the fact that it accepted the master's credibility determination did not establish that the court was biased against Husband or discriminated against him. Husband was awarded more than half of the marital estate and alimony for one year. He was also awarded the marital home and liquid assets, whereas the bulk of the assets awarded to Wife were retirement funds.

Having reviewed the parties' briefs, the record, the relevant law and the well-reasoned analysis by the trial court in the two opinions rendered in this case, the August 3, 2017 Opinion and the November 9, 2017 Rule 1925(a) Opinion, we conclude that the court properly disposed of Husband's claims on appeal. Accordingly, we adopt the trial court's two opinions as our own and affirm the order on that basis. We direct the parties to attach these opinions in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2018

Received 9/18/2017 3:17:33 PM Superior Court Middle District

Filed 9/18/2017 3:17:00 PM Superior Court Middle District
1382 MDA 2017

8/31/17
Copies mailed
atty Guzick + Day
Master

COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY--CIVIL ACTION-LAW

TRACY S. NEWCOMER,        : No. S-1901-2013
         Plaintiff           :
                             : -- DIVORCE CODE --
       vs.                  :
                             : Docket # 16 D 5574
RICHARD C. NEWCOMER,      :
         Defendant       :

Lori Schafer Guzick, Esquire - for Plaintiff
Arlen R. Day, II, Esquire - for Defendant
Kent Watkins, Esquire - Master

## DECISION

RUSSELL, J.

Both Plaintiff Tracy S. Newcomer and Defendant Richard C. Newcomer complain about the Master's report and recommendations in this divorce action. The Master's findings and recommendations, except as otherwise noted, follow.

## Master's Findings

The Master finds that Plaintiff was born October 19, 1966, resides with the parties' three children - born May 12, 2000, March 28, 2002 and July 23, 2005 - with Defendant sharing custody of the two younger children. Plaintiff and the children are in good health.

Plaintiff has a bachelor's degree in business administration and a master's degree in human resources which were earned before the marriage. Plaintiff has been employed at Country Meadows Retirement Community the last eight years, earning

1

about $120,000.00.[1]  Defendant was born December 15, 1969, resides in the former

marital residence, is self-employed as a landscaper and tree trimmer, can operate

various equipment and has a CDL.  Defendant contends that he is limited in

employment opportunities due to having back problems.  Plaintiff has been paying

Defendant alimony pendente lite since August 27, 2014.

The parties agree[2] on the date of separation values of the following assets and

liabilities:

PSECU account #9592 (Plaintiff) - $7,413.00

PSECU account #8356 (Plaintiff) - $93,695.00

Country  Meadows 401(K) (Plaintiff) - $57,181.00[3]

29 shares Met Life stock (Plaintiff) - $1,563.00[4]

Contents of marital home removed by Plaintiff - $2,400.00

[From the above accounts cash was withdrawn by Defendant in

the amount of $2,400.00 and 2013 real estate taxes on the

marital home in the amount of $5,366.00 were paid]

Marital home - $381,000.00

187 Sunline Trailer - $300.00

2000 Wilderness Camper - $1,800.00

2003 EZ Dump Trailer - $2,500.00

2003 Ford Truck - $10,000.00

---

[1] The Master also reports that Plaintiff earns in excess of $130,000.00 annually.  Plaintiff testified at the December 28, 2016 hearing that she earned about $140,000.00 per year.

[2] The record does not indicate agreement by the parties on all assets identified.

[3] It is not evident how this figure was determined.  The date of separation was April 30, 2013 and per documentation in the record the balance of the account on March 31, 2013 was $46,047.20 and on June 30, 2013 it was $49,417.41.  Plaintiff, however, agrees with the figure assigned by the Master.

[4] The parties have not disputed the classification of the asset as marital.  The record indicates Plaintiff possessed a pre-marital asset which resulted in the stock issuance.

2003 Hawk Trailer - $2,500.00

1995 Ford Pick-Up Truck - $500.00

1988 Ford Truck - $1,000.00

1978 International Scout - $400.00

2005 Dodge Ram 1500 - $1,509.00

Honda motorcycle - $450.00

Lawnmower - $80.00

2005 Chipper - $5,000.00

2007 Tire Machine/Balancer - $450.00

Air compressor - $450.00

Rototiller - $800.00

Miscellaneous tools, saws and sprayers - $1,500.00

55" Sony TV and stand - $600.00

Bed - $250.00

PSECU account #9004 (Defendant) - $317.00

PSECU account #0180 (Defendant) - $12,120.00

Metro Bank account #4763 (Defendant) - $914.00

Metro Bank account #9544 (Defendant) - $1,450.00

Santander Bank account #9650 (Defendant) - $9,680.00

Santander Bank account #4913 (Defendant) - $4,826.00

Santander IRA (Defendant) - $600.00

1955 Chevrolet Bel Air - $2,000.00

2013 HD Soft Tail - $10,203.00

3

Contents remaining in marital home - $2,500.00

Crawler Roto (sold by Defendant) - $3,800.00

1978 truck (sold by Defendant) - $600.00

2000 Kawasaki motorcycle (sold by Defendant) - $400.00

F250 truck (sold by Defendant) - $500.00

2005 John Deere backhoe - $12,500.00

1997 Bucket truck - $10,500.00

1999 Jeep Cherokee - $1,000.00

2005 Kawasaki 4-wheeler - $2,000.00

SP Construction trailer - $100.00

Ricky's bedroom furniture - $500.00

Chase Bank mortgage - $72,000.00

Metro Bank Heloc - $1,969.00[5]

The parties married on July 11, 1998 and separated on April 30, 2013. This is the first marriage of each party. Both parties contributed to household duties during the marriage.

UPS stock owned by Plaintiff redeemed during the marriage was used to pay marital debts and expenses, all of Plaintiff's life insurance policies are term with no cash value and the real estate purchased by Plaintiff after separation is not marital property.

---

[5] The Master made no finding about the Cabela's card referenced in Defendant's brief. No exception was filed about the card despite Defendant's argument. Nevertheless, testimony indicated the debt was paid in full prior to separation.

The marital portion of Plaintiff's Wells Fargo IRA is $7,290.70, Plaintiff's UPS 401K retirement plan has a marital value of $187,125.00 and the balance remaining of Plaintiff's UPS stock does not represent an increase in value during the marriage. The Master finds that Defendant's testimony "on the whole" was not credible and that his claim that there was $40,000.00 in cash in the parties' closet and that Plaintiff's employer paid her "for more than the outstanding loan balance on her car. . ."[6]

Although the parties stipulated that the Metro Bank home equity line of credit had a balance of $1,969.64 at separation, the current balance is $50,000.00 because Defendant took an advance on the line of credit. Therefore, the liens against the marital residence total $122,000.00.

In his review of the factors relative to equitable distribution, the Master includes the following additional information.

Defendant appears under-employed based upon his skills and training and he has taken no steps to increase his earning power since separation. Neither party contributed to the education, training or increased earning power of the other. Neither party offered testimony about the opportunity of either for future acquisition of capital assets. Plaintiff has steady income with medical, retirement, insurance and other benefits for herself and the children. Defendant will be obligated to purchase his medical insurance and finance his retirement, insurance and other benefits. Both parties contributed to the acquisition and appreciation of marital property and to the maintenance of the household and had a middle class lifestyle during the marriage.

---

[6] The sentence is incomplete. However, it is assumed that the Master meant to indicate that the claims by Defendant about cash and Plaintiff's employer were not credible. Likewise, it is believed the Master meant to find that Defendant's contention that Plaintiff took many thousands of dollars' worth of personal property was unfounded since while contending that Plaintiff took much marital furniture when she left Defendant, the latter also claimed that Plaintiff bought new furniture after separation.

5

The encumbering of the marital real estate with an additional $50,000.00 debt by Defendant dissipated the equity in the property and would have to result in a deduction in his share of equitable distribution. Prior to equitable distribution, Plaintiff has substantial value in real estate and bank accounts in her name.

Plaintiff is in a more stable economic circumstance than Defendant. The parties "submitted speculation" as to the tax ramifications applicable to equitable distribution but no account was presented.

Defendant set forth speculative expenses for sale, transfer or liquidation "with a particular" of the marital real estate[7] but no testimony, cross-examination or rebuttal was offered. The Master recognizes that transfer tax and a realtor's commission would be involved in the sale of the marital residence.

Defendant requests counsel fees and permanent alimony. Alimony is to rehabilitate a party in need. Defendant made no effort toward any rehabilitation beyond the skills he has and did not present a plan as to why he should be receiving additional alimony. The Master recommends finding that permanent alimony is not necessary based upon equitable distribution. Since 2014, Defendant has been receiving alimony pendente lite which award, the Master observes, is to enable a party to maintain a divorce action and is not a substitute for income when the party is employed or employable. Additionally, Defendant borrowed $50,000.00 against the marital real estate since separation. Therefore, the Master recommends that the request for counsel fees be denied.

The Master recommends that Plaintiff receive:

---

[7] It appears the Master meant to state a particular asset of the estate rather than refer solely to the real estate.

6

PSECU account #9592

PSECU account #8356

Country Meadows 401(K)

29 Shares of Met Life Stock

2000 Wilderness Camper

2003 Ford Truck

Honda Motorcycle

1955 Chevrolet Bel Air

2005 Kawasaki 4-Wheeler

Personal Property in Plaintiff's Possession

UPS 401(K)


The Master recommends that Defendant receive the following:

Marital home subject to the condition that he refinance
the existing debt on the marital home within one hundred
twenty (120) days from the final Divorce Decree in order to
remove Plaintiff's name from any obligations associated with
the real mortgage with Chase Bank and the Home Equity
Line of Credit with Metro Bank

1987 Sunline Trailer

2000 Wilderness Camper

3000 EZ Dump Trailer

2003 Ford Truck

2003 Hawk Trailer

1995 Ford Pick-Up Truck

1988 Ford Truck

1978 International Scout

2005 Dodge Ram 1500

Honda Motorcycle

Lawnmower

2005 Chipper

2007 Tire Machine/Balancer

Air Compressor

Rototiller

Miscellaneous tools, saws and sprayers

55" Sony TV and Stand

Bed

Cash removed from PSECU account #9592 ($2,400.00)

PSECU account #9004

PSECU account #0180

Metro Bank account #4763

Metro Bank account #9544

Santander Bank account #9650

Santander Bank account #4913

Santander IRA

1955 Chevrolet Bel Air

2013 HS Soft Tail

2005 John Deere Backhoe

1997 GMC Bucket Truck

1999 Jeep Cherokee

2005 Kawasaki 4-Wheeler

SP Construction Trailer

In determining the exceptions, the Court reviewed the record, the Master's report,

the parties' briefs and the pertinent statutory provisions, the latter which include the

following.

With respect to equitable distribution, the Divorce Code provides, in part, as

follows:

> (a) General rule.--Upon the request of either party in an
> action for divorce or annulment, the court shall equitably
> divide, distribute or assign, in kind or otherwise, the marital
> property between the parties without regard to marital
> misconduct in such percentages and in such manner as the
> court deems just after considering all relevant factors. The court
> may consider each marital asset or group of assets independently
> and apply a different percentage to each marital asset or group
> of assets. Factors which are relevant to the equitable division
> of marital property include the following:
>
>> (1) The length of the marriage.
>>
>> (2) Any prior marriage of either party.
>>
>> (3) The age, health, station, amount and sources of
>> income, vocational skills, employability, estate,
>> liabilities and needs of each of the parties.
>>
>> (4) The contribution by one party to the education,

9

training or increased earning power of the other party.

(5)  The opportunity of each party for future acquisitions of capital assets and income.

(6)  The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7)  The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8)  The value of the property set apart to each party.

(9)  The standard of living of the parties established during the marriage.

(10)  The economic circumstances of each party at the time the division of property is to become effective.

(10.1)  The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2)  The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11)  Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. 3502(a).

The Divorce Code states, in part, the following relative to an award of alimony.

(a) General rule.-- Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary.

10

(b)  Factors relevant.--In determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony, the court shall consider all relevant factors, including:

> (1) The relative earnings and earning capacities of the parties.
>
> (2)  The ages and the physical, mental and emotional conditions of the parties.
>
> (3)  The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
>
> (4)  The expectancies and inheritances of the parties.
>
> (5)  The duration of the marriage.
>
> (6)  The contribution by one party to the education, training or increased earning power of the other party.
>
> (7)  The extent to which the earning power, expense or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.
>
> (8)  The standard of living of the parties established during the marriage.
>
> (9)  The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.
>
> (10)  The relative assets and liabilities of the parties.
>
> (11)  The property brought to the marriage by either party.
>
> (12)  The contribution of a spouse as homemaker.
>
> (13)  The relative needs of the parties.
>
> (14)  The marital misconduct of either of the parties during the marriage.  The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative

11

to alimony . . .

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S. 3701(a),(b).

Finally, the Divorce Code states that in "proper cases," the reasonable counsel fees and expenses may be allowed. 23 Pa.C.S. 3702.

## Exceptions

Plaintiff and Defendant both complain that the Master erred by proposing that five items of personal property be distributed to both parties. Those items are:

2000 Wilderness Camper: valued at $1,800.00

2003 Ford Truck: valued at $10,000.00

Honda Motorcycle: valued at $450.00

1955 Chevrolet Bel Air: valued at $2,000.00; and,

2005 Kawasaki 4-wheeler:  valued at $2,000.00.[8]

The parties stipulated to the values of the items with the exception of the 4-wheeler.  Neither specifically objects to the value the Master placed on that item.  Both parties suggest that Defendant be awarded the items as Defendant either possesses or disposed of them.  The Court will sustain the exceptions and award the items to Defendant.  The balance of Defendant's exceptions will be addressed next.

Defendant complains that the Master erred in finding the marital portion of Plaintiff's Wells Fargo IRA to be $7,290.70, with the pre-marital portion being $1,133.47.  Defendant contends that the marital portion is $10,211.99.  Defendant argues that Exhibit D-11 indicates that the IRA value was $8,424.17 as of May 31, 2013.  However, Exhibit D-43 indicates that the value was $11,345.46 on December 31, 2016.  Plaintiff claims the Master did not err in the valuation as the value at separation was $8,424.17.  Neither party addressed the reason for the increase in value or specifically argued why the date of separation or that nearer to the final hearing of December 28, 2016 was the proper valuation date.

In light of the facts, it appears no marital funds were contributed to the IRA post-marriage.  Consequently, the Master's valuation date is accepted as 23 Pa.C.S. 3501(a.1) provides that the increase in value during the marriage of nonmarital property should be measured from the date of marriage to either the date of separation or that closest to the equitable distribution hearing depending on which date results in a lesser

---

[8] In his brief, Defendant claims the Master erroneously referred to a 2000 Kawasaki which does not exist. The Master identified a 2000 Kawasaki motorcycle valued at $400.00 and the twice-awarded 2005 Kawasaki 4-wheeler valued at $2,000.00. Although Defendant briefed the claim, he did not file a specific exception about the alleged error. The Court could find no reference to the motorcycle which the Master indicated had been sold in the hearing record. However, the record indicates Defendant testified to selling a Honda XR dirt bike for $400.00 resulting in any error of identification by the Master irrelevant to the proposed distribution.

increase.[9]  Additionally, Defendant contends that the Master erred in not distributing the Wells Fargo IRA of $10,211.99.  Plaintiff contends that she was the owner of the IRA prior to marriage and there was no need to recommend a distribution.  Although it could be argued that the Master erred in not mentioning the disposition in his proposed award, any potential error is harmless as the asset belongs to Plaintiff.

Defendant also complains that the Master determined the marital portion of Plaintiff's UPS Savings Plan to be $187,125.00 and contends that the amount should be $258,429.38.  Defendant claims that Plaintiff stipulated that the value of the UPS Savings Plan was $285,588.56, as indicated in Exhibit D-21 (Transcript, December 28, 2016, page 95).  He contends that the value as of the date of the marriage was $27,159.18.  Defendant argues that the difference supports his valuation of the marital portion.  Plaintiff argues that the balance in the savings plan at separation was $214,284.18 and since $27,159.18 was pre-marital, the marital portion is $187,125.00.  She cites her Exhibit #6 and testimony from the October 10, 2016 hearing, transcript at pg. 40, in support of her position.  The Court finds the pertinent marital value to be $258,429.38 as the valuation date closest to the last hearing on equitable distribution is the most equitable as no evidence indicates either party did anything following separation to affect the value of the asset.

Defendant claims the Master erred in not finding that the UPS stock had a marital value of $8,014.56.  He argues that as of the date of marriage, Plaintiff had 2,653 shares of UPS stock valued at $90,202.00, that during the marriage Plaintiff obtained additional UPS stock - namely, 5,822.0533 shares - and that during that time she sold 8,401.39 shares of stock, the latter totaling $560,321.91.  According to Defendant, the

---

[9] The decrease in the nonmarital UPS stock account, nevertheless, offsets this increase.

14

remaining 73.663 shares were acquired by Plaintiff during the marriage in 2006 and 2007. Plaintiff argues that she owned 2,653 shares of stock when she married Defendant, that she owned 73.6633 shares at separation, that the last sale occurred in 2008, and that the values of her stock were $90,202.00 at the date of marriage and $6,266.32 at separation, respectively. Plaintiff claims that the value of the asset which she terms nonmarital decreased by $83,935.68.

The record indicates that Plaintiff held UPS stock in an account at marriage. The stock split, shares were sold, purchased and given to charity. Defendant did not identify evidence in the record to indicate that the account decreased to "0" or any figure less than "74" shares at any time during the marriage such that the remaining shares may be directly traceable to marital purchases. As the value of the entire account decreased over the marriage, it was not error for the Master to consider the remaining value of the asset as nonmarital.

Defendant complains that the Master failed to factor dividends of about $800.00 from the UPS stock received by Plaintiff following separation into the distribution scheme. Plaintiff does not address the latter issue. The amount presumably was included in calculating Plaintiff's earnings for consideration in the award of child support and alimony pendente lite which Defendant has received since 2014 as Plaintiff testified that the dividends were included in her income for tax purposes. The Master's exclusion of the limited income received by Plaintiff applicable to the nonmarital asset post-separation is not found in error. Accordingly, the exception is denied.

Defendant contends that the Master erred in discounting his testimony regarding his health issues. Defendant argues that the Master failed to consider that the record

15

contained no evidence disputing Defendant's testimony about his having back problems and the degree they impacted and may impact his earnings and earning capacity. Plaintiff counters by arguing that no medical testimony was offered to indicate that Defendant could not work. Further, she states that Defendant testified to seeing a doctor only once or twice a year and to not taking medication for his back. The Master heard the testimony, evaluated the credibility of the witnesses, was in the best position to judge their credibility and to assign weight to the respective testimony.

In light of the limited evidence offered on the matter, it is not found that the Master erred as claimed by Defendant especially since the Master found Defendant not to be a credible witness. Nevertheless, it is noted that testimony or other evidence specifically contradicting Defendant's claims about suffering a back problem were not elicited. Defendant testified to the labor involved in his work, how he takes time off from work if he is in pain, that he does not desire to take medication to mask the symptoms and has tried to avoid invasive procedures which may preclude his working in his current occupation. Defendant, however, engaged in the same work prior to and throughout the marriage and following separation. The back problems have not precluded him from continuing what the evidence indicates is a labor-intensive business. Nevertheless, based on the evidence elicited, the Court may only speculate what Defendant may specifically or, in general, earn in another field of endeavor.

Defendant contends that the Master erred in finding him under-employed since he claims no evidence established he was able to obtain employment in a particular job that was available to him which he could perform and which would increase his earnings or earning capacity. Plaintiff argues that Defendant is forty-seven years old, in good

16

health, has been a self-employed landscaper since 1993 and has numerous skills. She notes that Defendant testified to his having built two homes with the assistance of his father, including the marital residence that has a stipulated value of $381,000.00. Further, she argues Defendant ran a towing business during the marriage, has a commercial driver's license, can operate numerous types of heavy equipment and purchases and resells vehicles online and at auto shows for additional income. Despite his numerous skills, Plaintiff argues Defendant only claimed $8,000.00 in income in 2015.

The Master's findings are not in error based upon the evidence he heard. Although Plaintiff apparently signed income tax returns over the years verifying what the parties were reporting Defendant earned, she did not testify that the returns were in error or that she had complained about Defendant's lack of contribution to household income despite his having all the skills she now argues he possesses. Nevertheless, the record establishes Defendant is capable of engaging in numerous fields. As Defendant testified that his self-employment is seasonal, he did not explain what he more recently does in the off-season or why he is not engaged in some work at that time. Clearly, he is now not employing all of his potential skills in a field - such as commercial truck driver or tow truck driver - during that time. Defendant claimed that he did various work in prior years during the off-season which he no longer does. Although he testified that was due, in part, to the cost involved, he offered no reason he could not obtain off-season work in some field - whether working for someone else or otherwise.

Moreover, in light of all the evidence about Defendant's abilities, it would appear his income is either underreported or some undisclosed facts explain his true financial

17

situation. Although the Master made no particular finding about Defendant's earning capacity relative to his health and skills, as noted, the Master found Defendant not to be a credible witness. Plaintiff offered no particularized information on the subject - such as by identifying a salaried position or hourly wage work available and compatible with Defendant's skills. As a result, the record does not enable the Court to find Defendant capable of engaging in some specific work which is currently or likely to be available and the salary or rate of pay for the position. However, it does establish that Defendant is not working at his capacity.

Defendant claims that the Master erred in finding that neither party offered testimony regarding his/her opportunity for future acquisition of assets and income. The Master did not err relative to the presentation of testimony directed specifically to that issue. However, the evidence did establish that based on the respective reported incomes of the parties and their educational backgrounds, a finding can be and should have been made that Plaintiff's current ability to acquire assets exceeds that of Defendant at this time. It is noted that Defendant claims he is financially unable to obtain another home from which to run his business and that impacts his ability to acquire assets. However, no reasonable financial motive for him to maintain a home in Schuylkill County valued at $381,000.00 so to enable a business which purportedly results in income limited to about $8,000.00 net per year was provided.

Defendant complains that the Master erred in his findings regarding Defendant's obtaining a line of credit which the Master somehow "factored as credit to Defendant instead of a debt," when considering issues of alimony, attorney fees and costs. According to Defendant, he had extended a $50,000.00 home equity line of credit

18

during the pendency of this action. The parties stipulated that the line of credit had a balance of $1,969.00 as of the date of separation. Defendant argues that in considering Defendant's request for an award of alimony and attorney fees, the Master applied that debt to reduce the value of the marital residence and recommended that Defendant pay the money back in 120 days. Defendant argues that he incurred $26,338.23 in attorney fees and costs, per Exhibit D-42, and that he obtained the home equity line of credit to maintain the litigation.

Plaintiff argues that she has been paying periodic alimony pendente lite to Defendant in the amount of $1,473.84 since August 27, 2014 - totaling more than $53,000.00 as of the date of her memorandum - which, she says, should have been used for Defendant's litigation costs. Rather, Plaintiff claims Defendant purchased a boat, a 4-wheeler, a $35,000.00 vehicle and pieces of equipment for his business during separation, citing testimony received on December 28, 2016 at pages 136 and 206 of the transcript. Further, Plaintiff complains that she produced hundreds of documents in this litigation and that delays in the divorce proceedings were caused by the necessity that she produce those documents upon the expectation that Defendant was calling an accountant to testify about them and that the delays only served to increase counsel fees while Defendant called no accountant to testify. As a result, Plaintiff attributes unspecified delays in the proceedings, the continued APL payments and the increased attorney fees incurred by both parties to Defendant's conduct during the litigation.

The record reveals that the litigation was indeed delayed due to Defendant's insistence on receiving documents from Plaintiff or about her assets. The parties should have been prepared for the Master's hearing when first scheduled. Plaintiff

19

correctly notes that no expert witness was called by Defendant to testify. The first Master's hearing was held on October 10, 2016, the second was held on December 6, 2016, and the third was held on December 28, 2016. The Master did not err in considering delays in the proceedings sought by Defendant, Defendant's purchasing a $4,500.00 boat and various motor vehicles while receiving alimony pendente lite and his contending that he needed the APL, together with the approximate $50,000.00 line of credit extension, to live and continue the litigation. Nevertheless, the record indicates the delays between hearings were limited and based upon Defendant's requests for financial documents which did result in the production of relevant information. Although the record does not support a finding that the requests were unwarranted, neither party explained why the information had not been obtained or provided earlier or why it took over three years for this divorce action to proceed to hearing.

The Master certainly could consider that Defendant failed to credibly explain why he purchased the various items of personalty during the litigation while in the difficult financial situation he claimed to face.[10] The Master appropriately assigned the increase in the line of credit which resulted in increasing the lien against the marital residence as Defendant's responsibility. He further properly considered the surrounding facts involving Defendant's financial claims.

In this regard, the Master found the marital line of credit debt to be $1,969.00. He proposed that since Defendant extended the home equity line of credit which resulted in increasing the lien against the marital residence without Plaintiff's

---

[10] In his testimony, Defendant did not clearly identify the amount of attorney fees and costs incurred specifically related to the divorce action, separate from the parties' custody dispute.

20

knowledge, Defendant, who the Master proposed receive the home, should be responsible to satisfy the entire debt. No error exists in that recommendation.[11]

Defendant complains that pursuant to 23 Pa.C.S. 3502(a)(10.1), the Master was required to consider tax ramifications associated with each asset to be distributed or divided. Defendant claims that he testified that he would incur an eighteen percent income tax consequence if a business asset were sold, including the marital residence. According to Defendant, he had claimed depreciation of over fifty percent of the $101,500.00 which he assigned as business use of the marital residence. Further, he complains that the Master did not factor the one percent real estate transfer tax that would be incurred if the residence were sold - namely, $3,810.00.

Plaintiff argues that the testimony about tax consequences was not worthy of belief as Defendant did not possess the pertinent knowledge to offer a tax opinion, Defendant testified that he relied upon an accountant for tax assistance and he did not express an intention to sell the marital residence or any other asset. In fact, Defendant testified that he desired to maintain the residence. His income reported for tax purposes has been limited and nothing established Defendant's expertise to opine about tax consequences and the effect of an asset's sale at an unknown time in the future upon his income tax liability. As a result, the Master did not err in not considering the income tax consequences of the sale of any asset based on the record established by Defendant. It is, however, expected that if Defendant refinances the debt on the home or must sell the home, that expenses will be incurred. It is appropriate that if such

---

[11] In the event Defendant - who desired to be awarded the home - is unable to satisfy the debt by refinancing or otherwise in the period proposed by the Master, the property may be sold with Defendant receiving the net proceeds.

21

event arises due to his compliance with the equitable distribution award, that the reasonable settlement expenses incurred be shared.

Defendant complains that the Master did not suggest an award of alimony be granted to him. Defendant claims he does not have funds to obtain the education he desires. Defendant actually testified that he did not desire to obtain further education until his children were no longer in school. Defendant also claims that upon divorce, he would incur health insurance expenses in excess of $750.00 per month. Defendant testified to what he believed the cost would be to obtain health insurance similar to that provided to him through Plaintiff's employment without apparently having looked for insurance coverage limited to medical coverage or based upon his income. Plaintiff provides medical, dental and optical coverage for the entire family at a cost of about $445.00 per month. Defendant argues that he makes about $25,000.00 per year, is proposed to be awarded no retirement or financial accounts as per the Master's recommendation and yet must pay $122,000.00 in debt within 120 days while trying to obtain health insurance and pay his attorney fees.[12]

Defendant argues that he should receive indefinite alimony of $2,500.00 per month or receive financial assets in the divorce action so he can pay off the mortgage and home equity line of credit. Specifically, Defendant testified that he wanted to be awarded the $381,000.00 house, plus $287,000.00, and all of the personal property in his possession, or, the $381,000.00 house, all personal property in his possession, the PSECU account of $93,695.00 and $2,500.00 per month in alimony indefinitely.

Alimony is to be awarded if "necessary." The Master identified the relevant factors under 23 Pa.C.S. 3701 and, except as observed herein, did not err in doing so.

---

[12] The attorney fee bills submitted into evidence indicate almost complete satisfaction.

22

The parties were married only fifteen years and are relatively young. The Master found both to be healthy. The parties share custody of two children and Plaintiff is the primary custodian of the third. Plaintiff earns much more than Defendant, who, however, has not satisfactorily explained his only reporting limited income despite his skills, many years of employment and accumulated assets. Plaintiff had educational degrees prior to marriage and while Defendant says he would like to obtain a degree, he does not desire to make an effort to do so in the near future. Both parties - primarily Plaintiff - brought property into the marriage which was utilized to maintain their life style and to build their home. Plaintiff pays the children's medical bills and provides for their numerous activities the costs of which are not insignificant. Plaintiff had placed money in educational accounts for the children until the parties' separation. Plaintiff purchased a home upon separation and mortgages exist on that home and the marital home. Neither party has any unusual need and both have the abilities to support themselves through appropriate effort and employment. Defendant will have sufficient property through equitable distribution and income via employment to provide for his reasonable needs without an alimony award for an extended time. Under the circumstances, it is found reasonable for him to receive alimony until December 31, 2017 in the amount currently received in alimony pendente lite. During this period, Defendant will have time to obtain insurance, refinance the home, if necessary, and prepare for the reduction in funds now provided by Plaintiff.

Defendant complains that the Master erred in considering the entire value of Defendant's business assets rather than simply the increase in value of the assets. Defendant argues that as of the date of marriage, the assets of the business totaled

23

$28,346.00, according to Defendant's Exhibit D-37, and he claims that the current value is $57,009.00. With an eighteen percent tax consequence, Defendant contends the marital value is $23,504.00. Plaintiff argues that the only business assets considered for equitable distribution during the litigation were the assets purchased during the marriage, that none of Defendant's pre-marital assets or those gifted to him was considered, and all items considered had been purchased with marital funds. Defendant does not contest findings about any financial business assets but only various items of equipment. It is not known what happened to all items of equipment that may have existed at the date of marriage, how or when they were transferred or disposed and what, if anything, occurred with any value attributed to any pre-marital asset when disposed, transferred, etc. Had any pre-marital business asset existed at separation, it would belong to Defendant unless the facts established otherwise. The only evidence elicited supported a determination that the assets acquired during the marriage became marital assets upon acquisition. As a result, there exists no error in the Master's determination.

Plaintiff's exceptions[13] are as follows:

First, Plaintiff complains that the Master erred in recommending an off-set distribution by awarding the equity of the marital home to Defendant and the retirement accounts to Plaintiff. Plaintiff claims she needs the tax-free equity of the home because being awarded retirement accounts does not help her current financial condition since

---

[13] Per Plaintiff's brief, she withdraws her Exception #4 that the Master erred in failing to recommend that the Wells Fargo Stock and UPS stock be distributed to her.

24

she cannot withdraw the financial funds until retirement.[14]  Plaintiff also claims that a distribution of the retirement accounts would secure Defendant's financial future. Plaintiff testified her monthly bills are $7,965.00.  Similar to Defendant, Plaintiff purchased assets, in particular, a $255,000.00 home, accumulated debt and dissipated funds during separation.  The evidence indicates the parties have disparate incomes. Plaintiff does not incur typical vehicle expenses as her vehicle and related costs are provided or covered, respectively, by her employer.  Plaintiff receives a 3 - 5% salary increase per year and has medical, optical and dental insurance available at some cost through her employment.  She has a 401K plan provided by her current employer.  As of the October 10, 2016 hearing, she testified the value was $46,047.00.  However, at the December 28, 2016 hearing, she testified that the value was $76,304.50 as of September 30, 2016.

Plaintiff testified that she wants to be awarded $150,000.00 in cash from the equity in the marital home, which would likely require that it be sold or refinanced, and she does not want to be obligated to pay alimony to her husband who historically reported earning little in comparison to her during the marriage - at least per the joint tax returns of the parties.  Defendant's being approved for the refinancing of about $275,000.00 for the current liens of $122,000.00 and Plaintiff's desired award of $150,000.00 and Defendant's ability to pay the refinanced mortgaged debt are all quite questionable.  Defendant, on the other hand, wants to receive the house, personal property and a large sum of cash, or, the house, a lesser amount of cash, the personalty, and alimony forever.  Neither party is satisfied with the Master's nearly equal

---

[14] Plaintiff claims she had to borrow money from her parents for a down payment on a $255,000.00 home she purchased after separation.  Plaintiff actually testified that her parents gave her $69,000.00 as a gift to purchase the home.

25

distribution of assets[15] and likely will not be with the Court's. Despite the claimed financial problems, pursuant to which each bases his/her reason to need cash, each has accumulated rather significant assets and debts[16] following separation and each believes the other should provide the cash. The Court is to divide, distribute or assign assets in kind or otherwise in such manner as deemed just. Except as modified, the recommendation of the Master results in justice to both parties under the circumstances. Neither has the cash available the other desires and such could not be obtained without unnecessary cost or hardship to the payor.

Plaintiff next complains that the Master erred in failing to apply the decrease in value of the UPS stock against the increase in value of the Wells Fargo IRA which assets were both nonmarital per 23 Pa.C.S. 3501(a.1). As discussed previously, Plaintiff contends that she owned 2,653 shares of UPS stock when first married and 73.6633 shares when separated and that she owned that number since 2008. At marriage, she claims the stock was worth $90,202.00 and at separation it was worth $6,266.32, resulting in a decrease in value of $83,935.68. Plaintiff also has a Wells Fargo Bank IRA. She made an initial contribution of $1,133.47 prior to the marriage and its balance at separation was $8,424.17. Consequently, Plaintiff argues there was no increase in nonmarital assets. Because the Master did not address the issue, she claims it is not clear if the decrease was considered in the distribution of assets to each party. The issue was considered by the Court herein and previously addressed with Defendant's exceptions.

---

[15] The record refers to additional equipment in Defendant's possession not identified by the Master such as a $1,000.00 trailer. Any equipment in his possession not specifically identified is being awarded to Defendant.

[16] Plaintiff testified to dissipating a financial account and incurring over $40,000.00 in credit card debt.

26

Plaintiff argues that the Master erred in not distributing the desk/hutch to the child, Rachael Newcomer, on her eighteenth birthday. The complaint does not involve equitable distribution between the parties. Assets of a child belong to the child and the parties may agree to make no claim against a child's asset.

Plaintiff claims the Master erred in failing to explain the percentage of the estate distributed to each party as it is too difficult for her to understand if the distribution scheme is equitable. The Master clearly specified the assets that he recommended be distributed to each party and identified the values of each asset. No singular asset was divided nor was it necessary to assign present values or later distribution values to any asset or a portion thereof. Each party will receive the financial accounts in his/her respective name. Plaintiff will receive the tangible personal property she possesses and Defendant will receive the house, encumbered by the liens which he must satisfy to release Plaintiff from responsibility thereon, and the personal property in his possession together with the proceeds previously obtained from the sale of the specified items of property. The distribution results in a near equal split of property. Except as noted in this determination, the Master properly addressed the pertinent issues affecting equitable distribution, alimony and attorney fees and his proposal is being adopted with some modification.

COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY--CIVIL ACTION-LAW

TRACY S. NEWCOMER,　　　　　　: No. S-1901-2013
　　　　　　Plaintiff　　　　　　:
　　　　　　　　　　　　　　　　: -- DIVORCE CODE --
　　vs.　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　: Docket #  16 D 5574
RICHARD C. NEWCOMER,　　　　　:
　　　　　　Defendant　　　　　　:

Lori Schafer Guzick, Esquire - for Plaintiff
Arlen R. Day, II, Esquire - for Defendant

**OPINION AND ORDER**
**PURSUANT TO Pa.R.A.P. 1925**

RUSSELL, J.

Defendant/Appellant Richard C. Newcomer filed an appeal from this court's order of August 3, 2017, which directed the distribution of property and debts, awarded alimony for a limited time to Appellant and entered a decree in divorce. After being ordered to file a concise statement of issues intended to be raised on appeal, Appellant filed a nine-page document extensively listing numerous complaints. A lengthy recitation of the pertinent history, testimony, documentary evidence, master's report, exceptions and court's analysis of the exceptions will not be recounted in response to Appellant's complaints as it is believed the decision of August 3, 2017 sets forth the history and basis for the rulings on the exceptions.

Due to the nature of the numerous complaints on appeal by Appellant, many of which claim that this court did not properly consider a specific statutory equitable distribution factor - all of which are to be considered comprehensively, rather than in a

1

vacuum - some of the pages of this court's August 3, 2017 decision where particular exceptions were addressed are noted herein.

As one of his later numbered complaints in his 1925 statement, Appellant contends that the court discriminated against him, was biased in favor of Appellee and that he had a higher burden of proof. The court accepted the master's determination that Appellant was not a credible witness in numerous respects. Simply because a party is not found credible does not render a court's determination biased. Nevertheless, this court reviewed the entire record in determining whether the master's credibility determination was well-grounded and analyzed the evidence pertinent to each exception.

As his first complaint - with multiple subparagraphs - Appellant contends that this court did not consider the facts and applicable Divorce Code factors, including Appellant's alleged health issues, while having placed no burden on Appellee to contradict Appellant's testimony. With regard to Appellant's complaints at 1(a) and (b) in his statement, this court discussed the record, the master's determination on the issue of Appellant's health, the master's finding that Appellant lacked credibility, noted the lack of specific contradictory evidence to Appellant's claim of his suffering back problems and the fact that Appellant, nevertheless, continued and wanted to continue to engage in his labor intensive self-employment (pages 15 and 16 of the decision).

On pages 16 through 18 of the decision, this court addressed Appellant's working capacity, observed that the record did not enable the court to find him capable of engaging in a specific job which was currently or likely available or the likely compensation for that position. The court noted, however, that Appellant testified that

2

his self-employment was seasonal and that he did not explain why he did not engage in work during the off-season as he had in the past prior to the parties' separation. Contrary to Appellant's complaint, those were the facts, not speculation. Simply stated, Appellant - who in the off-season had plowed snow, towed vehicles, drove truck and had a commercial driver's license - was capable of working in the off-season, had worked in the off-season while the parties resided together and offered no basis for his not seeking some employment during the off-season since the parties' separation.

Contrary to Appellant's complaints, the differences in Appellee's earnings through employment established by her W2 forms and Appellant's tax return information from his self-employment were discussed at several parts of the decision as were the parties' liabilities and needs.

Similarly, the marital debt - being the real estate mortgage and home equity line of credit against the home which Appellant requested be awarded to him - was clearly discussed and set forth in the decision and in the final order (pages 4, 5). Likewise, the employment benefit information is set forth in various sections of the decision. Both parties incurred substantial debt following separation - Appellee purchased a home encumbered by a mortgage, bought furnishings for the home and incurred credit card debt in excess of $40,000.00, while Appellant extended the home equity debt against the marital residence and purchased vehicles, including a new truck and a boat. Contrary to Appellant's complaint, the decision details the purchases, debts, the pre-marital property of Appellee and the property awarded in equitable distribution.

Appellant complains about the lack of contributions by Appellee. The court discussed the acquisition of marital property and Appellant's involvement in the

3

construction of the marital home (page 4). Contrary to Appellant's claim that Appellee offered no proof of contribution by her, the record contains pages of testimony from Appellee of her using a significant amount of pre-marital property, in particular, through the sale of her stock, towards the costs of construction, including payment of construction loans, for the marital home which the parties agreed had a fair market value of $381,000.00. Moreover, the issue of lack of contributions by Appellee was not a subject of Appellant's exceptions to the master's award, and, therefore, has been waived. *Benson v. Benson*, 515 A2d 917 (Pa. Super. 1986) (complaints waived if not subject of exceptions). In fact, Appellant argued in his brief in support of his exceptions that "both" parties contributed. (Appellant's brief, pg. 12 (May 19, 2017) ).

Appellant complains that this court erred in not considering the value of property set apart to each other. The court's award was entered following a consideration of the nature and type of property and the value of each item. The decision together with decree clearly identify the values of the items of property and specifies the particular award to each party.

With regard to Appellant's complaint about Appellee's Wells Fargo account, the issue was addressed on page 13 of the decision. The UPS Savings Plan determination, about which Appellant complains, is set forth on pages 14 through 15 of the decision. This court does not know the basis for Appellant's contention that the court threatened him with termination of alimony pendente lite for his seeking delays in the proceedings. Appellant also did not except to the master's award in this regard.

Appellant complains that the court "counted" the home equity line of credit debt against him twice. Following separation, Appellant extended the line of credit lien

4

against the real estate without informing Appellee or obtaining Appellee's consent. As a result, the real estate is burdened by additional debt. The court has no idea what Appellant means by contending that this court factored the debt "twice" against him. The lien was extended post-separation by Appellant. It serves to reduce the equity in the marital home. Appellant claimed he used the funds for his expenses to live. However, he also acknowledged buying various assets, including a truck and boat, during the relevant period while also receiving his self-employment income and alimony pendente lite. Those constitute the facts and are discussed in the court's decision at several places including pages 18 through 21.

Appellant contends that this court erred in factoring non-marital value into Appellant's business. The evidence with regard to Appellant's business indicated that it was not a corporate business and no good will or receivables were mentioned by the parties. The only business assets addressed were items of tangible personal property and bank accounts. The record supports the evaluation of the evidence by the master as to the nature of those assets being marital property and the assignment of their values. 23 Pa.C.S. 3501(a) (property acquired during the marriage is presumed marital unless acquired by method specified).

Appellant contends that this court erred in not properly considering the standard of living of the parties. Both parties complained about their lack of resources to live in the same manner in which they had while residing together. Both complained that they had gone into debt during the pendency of the divorce. The master and court, including at pages 24 through 26 of the decision, considered the liabilities incurred by both parties during the separation and their standards of living.

5

Appellant complains that the court did not properly consider his economic circumstances. Appellant says the equitable distribution award requires that he pay an outstanding debt. However, it was Appellant who desired to be awarded the $381,000.00 home on which the pre-separation $72,000.00 mortgage and approximate $2,000.00 home equity liens existed. The award requires that he satisfy the existing debts to remove Appellee's name from any obligations associated with the mortgage and home equity line of credit. Obviously, Appellant may seek to have Appellee released from liability on the debts by refinancing - with Appellee sharing in the costs to do so, as this court ordered - or by his reaching some other agreement with the pertinent lien holders. Appellant complains that he is financially incapable of doing that. The court could have directed that the home be sold and the net proceeds be awarded to Appellant. However, the award of the home to Appellant coincided with his request. Nevertheless, the home may also be sold per the court's award if Appellant does not desire to maintain it. He will then receive the net sales proceeds with both parties first sharing in the expenses of sale.

Appellant complains that the court did not consider the tax ramifications. The court evaluated the evidence regarding tax ramifications on pages 21 through 22 of the decision. Appellant complains the court erred in not considering the costs of sale of the marital residence. The court considered those costs in its decision on pages 21 through 22 and in the final order at paragraph 2 which provides for the sharing of settlement charges for any refinancing and for any possible sale costs, including realtors commission.

6

Appellant complains about the award of alimony. The court has no idea what Appellant means by the complaint about the home equity line of credit debt. As indicated, Appellant incurred the post-separation debt which, however, serves as a lien against the marital estate. Similarly, Appellee complained that she had incurred a substantial amount of debt in obtaining a mortgage loan for the home she purchased, furnishings for the house, the children's medical expenses, their activities and other living expenses for herself and the children following the separation. Appellee complained that she did not have funds to pay alimony to Appellant while Appellant was seeking alimony indefinitely. The discussion of alimony is set forth, in part, on pages 22 through 23 of the court decision.

Appellant complains that the court erred in failing to award attorney fees and costs to him. Contrary to Appellant's allegation, the court did not apply the home equity loan against him in denying an award of attorney fees. The evaluation of an attorney fee award and the supporting evidence, and lack thereof, is set forth on page 22 of the decision.

Appellant complains that this court erred in failing to set forth the reasoning for the equitable distribution award. The court evaluated the exceptions of the parties, analyzed each one and determined that, with limited modifications, the master's recommendation resulted in equitable justice to both parties. The basis of the award of mostly tangible personal property and real property to Appellant and financial assets held in Appellee's name to Appellee is encompassed in the decision.

Appellant contends that this court erred in not remanding the matter to the master with regard to the issue of the disparity for future acquisition of assets and

7

incomes. The court addressed the issue of disparity on page 18 of the decision. Further, the divorce action was filed in 2013, numerous continuances and several master's hearings were held. The parties had ample time to complete the record, Appellant never contended that the record was incomplete, that it was not sufficient for the master to make a recommendation or for the court to rule on exceptions and neither party requested a remand for the purpose of submitting more evidence upon their filing exceptions to the master's recommendation. Similarly, Appellant claims that because he now believes that insufficient evidence of value existed in the record and clarification was needed on tax consequences or sale costs, the court erred in not remanding the case to the master for the purpose of having the parties submit more evidence. The parties were well aware of the master's determination, both filed exceptions and Appellant made no complaint about the state of the record which, nevertheless, was more than sufficient to make a proper determination. No need exists to remand the case to the master for him to hold further hearings and any request to do so by Appellant has been waived.