J-S54020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| D.D.G. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| S.R.G. | : | |
| | : | |
| Appellant | : | No. 691 MDA 2020 |

Appeal from the Decree Entered April 10, 2020
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2012-CV-971-DV

BEFORE: NICHOLS, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: APRIL 1, 2021**

In this appeal, S.R.G. ("Wife") challenges the equitable distribution order entered by the Dauphin County Court of Common Pleas. We conclude the court did not err in the equitable distribution award, the award of $1.00 in alimony, or the denial of counsel fees and expenses, and affirm the order.

S.R.G. and D.D.G. ("Husband") were married in 1981, and in 2012, Husband filed a Complaint in Divorce. Wife did not oppose the divorce but disputed the economic issues, which proceeded before a master. The Master held a hearing in December 2018 at which the parties entered into stipulations and presented testimony and exhibits. The trial court offered the following summary, in its Pa.R.A.P. 1925(a) opinion, of the Master's factual findings:

> Husband, who was born in 1954 and is in good health, was the primary wage earner during the parties' marriage. Husband entered the United States Air Force as an Officer in 1976, and served on active duty in the Air Force for approximately 16 years of the parties' marriage, often

requiring him to be away from home. After retiring from the Air Force in 1997, Husband was employed by the Commonwealth of Pennsylvania until 2004, when he became employed by the Federal Government. As of December 2018, Husband remained employed full-time by the Federal Government and also worked as a part-time adjunct professor for Harrisburg Area Community College ("HACC"). Husband receives medical insurance, dental insurance, vision insurance, life insurance, and retirement plan participation through his employment with the Federal Government. As of November 2019, Husband's gross annual income totaled $226,627.00, consisting of the following:

(a) $152,353.00 in wages from his full-time employment with the Federal Government;

(b) $21,440.00 in wages from his part-time employment . . .;

(c) $8,229.00 from a [Department of Veteran Affairs ("VA")] waiver;

(d) $40,755.00 from a VA retirement plan; and

(e) $3,850.00 in rental income, received from renting out the marital residence.

([Master's Report and Recommendation ("R&R"), Nov. 27, 2019, at 1-4]). A total of $31,989.00 of Husband's annual income from his VA retirement plan is marital property that is subject to equitable distribution. Husband's VA waiver, the non-marital portion of the VA retirement, and his share of the marital portion of the VA retirement will continue for Husband's life even after he retires from his employment with the Federal Government. Additionally, when Husband reaches his full Social Security retirement age, he anticipates a Social Security retirement benefit of $2,834.00 per month, as well as a Federal Employees Retirement System ("FERS") benefit of at least $1,451.00 per month. At retirement, Husband will also have access to the portion of contributory retirement benefits awarded to him in equitable distribution. Husband's monthly expenses total $6,829.00.

The Master found that Husband's separate non-marital estate consists of the following:

(a) non-marital portion of Thrift Savings Plan, valued at $51,047.00 as of June 30, 2016;

(b) non-marital portion of FERS, valued at $82,634.00 as of September 30, 2016;

(c) non-marital portion of VA retirement waiver, valued at $156,344.00 as of September 30, 2016; and

(d) non-marital portion of VA retirement benefits, valued at $62,386.00 as of September 30, 2016.

(R&R, at 11).

Wife, who was born in 1950, was working for the Federal Government at the time of the parties' marriage in 1981. At some time after 1986, Wife resigned from her employment to take care of the children and home, occasionally working outside the home when convenient to her homemaking and child-care duties. In 2004, Wife again became employed full-time by the Federal Government (specifically, the Department of Defense), where she is still employed. As of November 2019, Wife's gross annual income totaled $178,512.00, consisting of the following:

(a) $157,486.00 in wages from her employment with the Department of Defense; and

(b) $21,026.00 in Social Security Retirement.

(R&R, at 8, 18). Additionally, Wife receives $908.44 per month in spousal support[2] from Husband pursuant to a June 26, 2013 support order. Moreover, when Wife retires from the Federal Government, she anticipates a Civil Service Retirement System ("CSRS") benefit of at least $4,950.00 per month, and she also anticipates receipt of her portion of the marital component of Husband's military retirement benefit and her contributory retirement benefits. Wife's monthly expenses total $4,676.05.

The Master found that Wife's separate non-marital estate consists of the following:

(a) non-marital portion of Thrift Savings Plan, valued at $50,147.00 as 30, 2016; of June and

- 3 -

(b) non-marital portion of FERS,[3] valued at $181,695.00 as of September 30, 2016.

(R&R, at 11).

[2] Wife also recently filed a child support action against Husband, requesting child support for the parties' grandson. This Court denied Wife's request, and the Superior Court affirmed this denial on October 16, 2019.

[3] As explained later in this Opinion, this benefit is in fact a CSRS benefit, rather than a FERS benefit.

Trial Court Opinion, filed July 14, 2020, at 3-6 (some citations omitted).

In the Report and Recommendation, the Master recommended Wife receive 55% of the marital portion of Husband's military retirement benefit, and each party receive 50% of the remaining marital assets. The Master concluded an award of alimony was not appropriate, but was concerned that Husband would convert an additional portion of his military retirement benefit to disability, which would deprive Wife of the income from the military retirement benefit. R&R at 36-37. The Master therefore awarded Wife $1.00 per year in alimony, which would be "modifiable only upon Husband's election to waive military retirement benefits for disability." *Id.* at 37. The Master recommended denying Wife's claims for counsel fees, costs, and expenses associated with the divorce. Wife filed exceptions. The Master issued a Supplemental Report and Recommendation, in which she acknowledged that she had erroneously stated that Wife has a non-marital $181,695.00 FERS benefit, when in fact the benefit was a CSRS benefit. The trial court issued an order correcting the original R&R to reflect that the benefit was a CSRS benefit.

The trial court heard argument on the remaining exceptions. In April 2020, the court granted an exception, and ordered Wife to retain her military identification and Husband to take the necessary steps to ensure Wife retained the military identification and its concomitant privileges and benefits.[1] The court denied the remaining exceptions. Wife filed a notice of appeal.

Wife raises the following issues:

> 1. Whether the trial court [erred] in reducing the value of the marital residence by estimated costs of sale where the record does not demonstrate that Husband intends to sell the residence[?]
>
> 2. Whether the trial court erred in denying Wife's request to be awarded one-half of the net fair rental value of the marital residence[?]
>
> 3. Whether the trial court erred by awarding 55% of Husband's military benefit to Wife and erred in its equal distribution of the remaining marital assets[?]
>
> 4. Whether the trial court erred in determining that the cost of the former spouse survivor benefit be paid from Wife's share of the benefit[?]
>
> 5. Whether the trial court erred by only awarding alimony in the amount of $1.00 to Wife[?]
>
> 6. Whether the trial court erred in denying Wife's request for Husband to pay her reasonable counsel fees and expenses[?]
>
> 7. Whether the trial court erred in determining that each party is able to meet his/her reasonable needs with his/her own income[?]
>
> 8. Whether the trial court erred in failing to consider nearly $15,894.76 in unreimbursed medical expenses for 2013-

_____

[1] Also in April 2020, the trial court entered a divorce decree.

2018 owed by Husband to Wife in the parties' APL case filed with the Dauphin County Domestic Relations Section[?]

Wife's Br. at 4-5.

"Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." ***Carney v. Carney***, 167 A.3d 127, 131 (Pa.Super. 2017) (quoting ***Morgante v. Morgante***, 119 A.3d 382, 386 (Pa.Super. 2015)). We "will not find an 'abuse of discretion' unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." ***Id.*** (citation omitted). When reviewing "the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole." ***Id.*** (citation omitted). In doing so, court must "measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." ***Id.*** (citation omitted). We will not reverse the trial court's factual findings or credibility determinations unless they are unsupported by the record. ***Id.*** Further, the "master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." ***Id.*** (citation omitted).

The Pennsylvania Divorce Code governs the equitable distribution of property and provides for factors that courts should consider:

**(a) General rule.**--Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

> (10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.
>
> (10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.
>
> (11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a).

A. Marital Home

Wife's first two issues relate to the marital home. She argues the court erred in considering the sale of the home, and the associated costs of selling the home, when distributing the assets, and erred in denying her an award of fair rental value.

Wife argues the court erred in considering the costs of selling the home, claiming that the record did not reflect that Husband wanted to sell the home and did not contain evidence regarding the costs. She argues Husband presented no evidence that the home was listed for sale, but, rather, the record established the Husband had attempted to sell the home in the past, but could not. Wife further argues Husband's request to sell the house in 2013 does not demonstrate he intends to sell the house now, and that his post-hearing assertion that he planned to sell the house was not sworn testimony of record. She claims the Master erred in applying the Master's own estimation of the cost of sale and deducting that from the fair market value of the home. She further claims the Master should have considered that Husband sold a

time-share to a friend for $1, but did not transfer the loan associated with the time-share. Rather, that time-share loan was rolled into a refinanced mortgage, thereby reducing the parties' equity in the house.

The trial court concluded that there was evidence Husband intended to sell the home, including that he filed a petition for special relief in 2013 requesting that he be permitted to list the property for sale.[2] 1925(a) Op. at 7. Further, the court noted that the "Pennsylvania Divorce Code mandates that in determining the equitable distribution of assets, a court consider, among other things, sales expenses associated with assets, 'which expense need not be immediate and certain.'" *Id.* (citing 23 Pa.C.S.A. § 3502(a)(10.2)) (emphasis omitted). The trial court therefore found the Master did not err in reducing the value of the marital residence by the costs of the sale and it did not err in denying Wife's exception to that decision. *Id.*

We conclude the court did not abuse its discretion. One factor a court should consider when equitably distributing the property is the expense associated with the sale of a particular asset, regardless of whether such sale was "immediate" or whether the costs were "certain." 23 Pa.C.S.A. § 3502(a)(10.2). Therefore, the court properly considered the sale of the house. Further, in considering the sale of the asset, it was proper for the court to consider selling costs as part of the costs of selling the asset.

_____

[2] The court also referenced Husband's statement in his post-hearing memorandum that he "plans to sell the house immediately following divorce." 1925(a) Op. at 7. However, as this was not evidence presented at the hearing, we decline to consider it.

Wife next claims that the court should have awarded her one-half of the rental value of the marital residence. She argues Husband has occupied the marital home during the separation, and rolled a time-share loan into the mortgage, thereby reducing the equity in the home. Therefore, according to Wife, although "he may have paid expenses for the marital home, he also reduced the equity by rolling in a loan for a timeshare that he could have sold for value but instead transferred for $1.00 to a third party." Wife's Br. at 17.

Whether to grant rental value of a property as part of an equitable distribution award is within the discretion of the trial court. ***Lee v. Lee***, 978 A.2d 380, 385 (Pa.Super. 2009). "The basis of the award of rental value is that the party out of possession of jointly owned property (generally the party that has moved out of the formal marital residence) is entitled to compensation for her/his interest in the property." ***Id.*** (citation omitted).

"Generally, 'parties have an equal one-half interest in the marital property,' and thus 'the dispossessed party will be entitled to a credit for one-half of the fair rental value of the marital home.'" ***Id.*** (citation omitted). Courts apply the following analysis when deciding whether to award rental credit:

> First, the general rule is that the dispossessed party is entitled to a credit for the fair rental value of jointly held marital property against a party in possession of that property, provided there are no equitable defenses to the credit. Second, the rental credit is based upon, and therefore limited by, the extent of the dispossessed party's interest in the property. . . . Third, the rental value is limited to the period of time during which a party is dispossessed and the other party is in actual or constructive possession of the property. Fourth, the party in possession is entitled

to a credit against the rental value for payments made to maintain the property on behalf of the dispossessed spouse. Generally, in regard to the former marital residence, payments made on behalf of the dispossessed spouse will be one-half of the expenses including debt service on the property. This is so because equity places a presumption upon the dispossessed spouse of responsibility for expenses to the extent of her/his ownership interest which is generally one-half. Finally, we note that whether the rental credit is due and the amount thereof is within the sound discretion of the court of common pleas.

*Id.* at 385-86 (citation omitted).

Here, the trial court concluded:

Regarding the instant matter, it would not be appropriate to award one-half of the fair rental value of the marital residence to Wife considering the facts of record. First, both parties have a similar income and similar assets, and when they retire, they will both have similar retirement incomes. Therefore, Wife does not suffer from a significant financial discrepancy that would weigh in favor of awarding her rent. Second, Husband remained in the residence for many years after the parties' separation and made all requisite payments associated with the home, including maintenance costs. By making these payments, Husband preserved the home as a marital asset and protected the parties' credit ratings. Given that the Husband refrained from selling the marital residence for many years following separation and consistently maintained the residence even though he was not bound to do so, and considering the similarity of the parties' present and future financial prospects, this Court did not err in determining that it would be inequitable to award Wife one-half of the fair rental value of the marital residence.

1925(a) Op. at 8.

This was not an abuse of discretion. Wife has not lived at the marital residence since 2013. Although Husband has resided there since that time, he has been paying the mortgage and bills associated with the residence. The

Master thus concluded that, reviewing the totality of the case, an award of fair rental value would not be equitable. She noted the parties had $650,000, plus Husband's military retirement benefit, as marital assets, and both had similar incomes. She noted that Husband maintained the asset, even though he would have preferred to sell it, and that by doing so he protected the parties' credit rating. The record supports these findings, and it was not an abuse of discretion to deny an award of fair rental value.

B. <u>Military Retirement Benefit and Former Spouse Survivor Benefit</u>

Next, we will address Wife's claims regarding the military retirement benefit and former spouse survivor benefit.

Wife claims the Master erred when it awarded her 55% of Husband's military retirement benefit, paid to her over 20 years, with the remaining amount being returned to Husband if Wife predeceases him. She claims that she is not likely to collect the full award, and it therefore would be equitable to receive the military retirement payment over five years. Wife maintains that Husband has more retirement assets than she does and, as the court recognized, she sacrificed her career to support his. Wife claims that if the period of her distribution remains 20 years, than Husband's distribution also should be over 20 years.

The trial court found:

> Wife claims that this Court erred by awarding her a greater percentage (55%) of the marital portion of Husband's military retirement benefit to her and equally distributing the remaining marital assets (50% to each party), rather than giving her a greater percentage of the remaining

marital assets. Wife also contends that the Court erred by directing that she pay the former spouse survivor benefit of Husband's military retirement. Such was not error for the reasons set forth below.

[The court set forth the Section 3502(a) factors].

Upon consideration of the equitable distribution factors, the Master determined, and this Court agreed, that most of the factors did not favor a greater distribution to either of the parties, and only four factors (3, 7, 8, and 11) favored a greater distribution to Wife. Factor 11 favors a greater distribution to Wife because she has majority custody of the parties' grandchild and has the primary responsibility for providing for the grandchild's everyday needs, thereby raising her regular expenses. The other three factors, although they favor a greater distribution to wife, are related to Husband's former service in the military. In particular, factors 4 and 8 favor greater distribution to the Wife because she largely sacrificed her career in the early stages of the parties' marriage to take care of the home and children while Husband advanced his military career. Due to his ability to advance his career from the earliest stages of the marriage while [Wife] forewent her career to care for the home and children, Husband's income is also superior such that Factor 3 favors a greater distribution to Wife as well. However, it is worth noting that despite Husband's slight income superiority and his ability to advance his career from the earliest stages, Wife was able to commence a successful Federal Government career of her own in 1997. Since then, her earnings have sharply increased such that she has attained a current gross annual income of $178,512.00. Moreover, while Husband's income is superior, some of his income sources are not fixed and can change on a yearly basis. For example, his rental income from the marital residence will be eliminated if he sells the residence. Furthermore, while Husband teaches on an adjunct basis at HACC, this income can vary from year to year and is not guaranteed.

In sum, there were only four factors that favored a greater distribution to Wife, and most of those factors directly pertained to Wife's personal sacrifices so that Husband could advance his military career. And while Husband's income is superior and Wife's expenses are somewhat higher, she has

attained a sizeable annual income from her employment over the last two decades, and she stands to receive a respectable CSRS retirement benefit upon her eventual retirement from the Department of Defense. Moreover, having been awarded 55% of the Husband's military retirement, Wife will benefit from the fact that federal law regarding military retirement awards to former spouses entitles her to receive a proportional share of any annual cost of living increases. *See Morgante v. Morgante*, 119 A.3d 382 (Pa. Super. 2015). Taking all of this into consideration, it was equitable to award Wife a greater percentage (55%) of the marital portion of Husband's military retirement to Wife and distribute the remaining assets equally between the two parties, and the Court did not err in doing so.

1925(a) Op. at 9-11.

The record supports the findings, and the court did not abuse its discretion when it determined, based on all the evidence presented, that the award was equitable.

Wife next claims the Master should have divided the cost of the former spouse survivor benefit between the parties, instead of requiring her to be responsible for the costs. She argues she is paying for a benefit she may not receive, as she will not receive the benefit if Husband pre-deceases her.

The trial court found it was not improper to direct Wife to pay the cost of the former spouse survivor benefit from her share of the military retirement benefits. The cost is "about $266.27 per month." R&R at 20. The court reasoned that the survivor "benefit, at most recent valuation, totaled $98,042.00. However, its value would not be realized by Wife if she predeceased Husband." 1925(a) Op. at 12.

- 14 -

The record supports the court's factual findings and the court did not abuse its discretion. Wife stood to receive the survivor benefit, and it was therefore not inequitable to require her to bear the cost. The court considered the totality of the circumstances, and Wife has not established that requiring her to pay the cost from her share of the military retirement was an abuse of discretion.

C. Alimony

In her next issue, Wife argues the Master erred in awarding her only $1.00 in alimony. She claims application of the factors "gravitate in favor of awarding Wife permanent alimony to ensure that her reasonable needs are met given that she will be unable to support herself through appropriate employment." Wife's Br. at 19.

Section 3701 of the Divorce Code provides that "[w]here a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary." 23 Pa.C.S.A. § 3701(a). The purpose of alimony is not to reward or punish the parties, but rather "to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met." *Isralsky v. Isralsky*, 824 A.2d 1178, 1188 (Pa.Super. 2003) (citation omitted). "Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay." *Id.* (citations and quotation marks omitted). "Following divorce, alimony provides a secondary remedy and is

available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution." ***Balicki v. Balicki***, 4 A.3d 654, 659 (Pa.Super. 2010).

"In determining the nature, amount, duration, and manner of payment of alimony," the court must "consider all relevant factors," including:

> (1) The relative earnings and earning capacities of the parties.
>
> (2) The ages and the physical, mental and emotional conditions of the parties.
>
> (3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.
>
> (4) The expectancies and inheritances of the parties.
>
> (5) The duration of the marriage.
>
> (6) The contribution by one party to the education, training or increased earning power of the other party.
>
> (7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.
>
> (8) The standard of living of the parties established during the marriage.
>
> (9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.
>
> (10) The relative assets and liabilities of the parties.
>
> (11) The property brought to the marriage by either party.
>
> (12) The contribution of a spouse as homemaker.
>
> (13) The relative needs of the parties.
>
> (14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties

from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The Federal, State and local tax ramifications of the alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under Chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

23 Pa.C.S.A. § 3701(b).

Here, the trial court concluded the award of $1.00 was not error. It reasoned:

> The Master found, and this Court agreed, that a majority of the factors set forth in Section 3701(b) do not support awarding alimony to Wife at this time. Of particular relevance, th[e trial c]ourt notes that Wife is only slightly older than Husband; she is gainfully employed with the Department of Defense and earns a respectable annual income that is similar to that of Husband; she anticipates a sizeable CSRS benefit upon her retirement from the Department of Defense. Moreover, since this Court upheld the Master's recommendations, Wife is set to receive 55% of the marital portion of Husband's military retirement benefit over the next twenty years. Taking all of this into consideration, awarding alimony to Wife would not be appropriate in this case to effectuate economic justice, as the reasonable needs of Wife can be achieved by way of an equitable distribution award in addition to the income that she receives from her gainful employment with the Federal Government.
>
> Although Wife would not be entitled to an award of alimony at this time based upon the factors in the Divorce Code, the Master, in her R&R, noted her concern that following the

issuance of a final divorce decree, Husband may elect to convert an additional portion of his military retirement benefit to disability, thereby depriving Wife from receiving her share of the Husband's military retirement that the Master recommended be awarded to Wife as part of equitable distribution. To protect Wife against this potential scenario, the Master recommended Husband be ordered to pay $1.00 per year in alimony to Wife, said alimony award to only be modified if Husband converts an additional military retirement benefit to disability. In denying Wife's exception to this recommendation, this Court adopted this recommendation by the Master. This nominal award of $1.00 per year is equitable and does not constitute error because it acknowledges that an award of alimony to Wife is not appropriate given her current financial circumstances, but also protects Wife by providing her the option to revisit and request modification of her alimony award in the future should Husband convert his military retirement benefit.

1925(a) Op. at 12-14.

The record supports the court's factual findings, and it did not abuse its discretion in finding an award of alimony of $1.00 per year was sufficient. The factors did not support an award of alimony at this time, but the award of $1.00 ensured that if Husband converted his military retirement benefits, Wife would be able to recover her lost benefit.

D. Reasonable Counsel Fees

Wife next claims the Master erred in denying her request for reasonable counsel fees and expenses. Wife claims Husband's income "greatly exceeds Wife's income and he has substantially more resources available to him as compared to Wife." Wife's Br. at 24. She states Husband did not challenge the reasonableness of the fees, and alleges that she "absolutely needs to have an

award of counsel fees, as the costs for litigating this protracted divorce matter have crippled her financially." *Id.*

Section 3702 of the Divorce Code provides that "the court may allow a spouse . . . reasonable counsel fees and expenses." 23 Pa.C.S.A. § 3702(a). "The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be 'on par' with one another." *McCoy v. McCoy*, 888 A.2d 906, 909 (Pa.Super. 2005) (quoting *Teodorski v. Teodorski*, 857 A.2d 194, 201 (Pa.Super. 2004)). "Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution." *Id.* (quoting *Teodorski*, 857 A.2d at 201).

The trial court found it was not error to deny Wife's request for counsel fees. It reasoned:

> At the December 2018 Hearing before the Master, Wife did not express an inability to pay her attorney's fees, nor did she suggest that Husband had acted in a vexatious, dilatory, or obdurate manner throughout the course of the divorce proceedings. Rather, she merely indicated that she believed Husband should pay the attorney's fees because "[h]e's the one that wanted the divorce", he raised the idea of a divorce "out of the blue", and, therefore, Wife opined that "this is [Husband's] divorce." (Notes of Testimony, 12/6/18 Divorce Master Hearing, at 208). However, the notion that a party can be ordered to pay legal fees in a divorce action merely because that party is the one who initiated the divorce is

> entirely unsubstantiated by Pennsylvania law. In fact, such a notion is entirely inconsistent with one of the explicitly stated policy objectives of Pennsylvania's Divorce Code, which is to [g]ive primary consideration to the welfare of the family rather than the vindication of private rights or the punishment of matrimonial wrongs." 23 Pa.C.S.A. §[ ]3102(a)(3).

1925(a) Op. at 14.

The record support the court's findings and it did not abuse its discretion in denying Wife's request for counsel fees and expenses. Wife is not at a financial disadvantage, and fees and costs are not awarded based on who filed the divorce complaint.

E. Factors

Wife next argues that the trial court erred in concluding that she was able to meet her reasonable needs. She claims the Master should have considered Wife's expenses in caring for the parties' grandson, who had been in the parties' joint custody and is now in her primary custody. She claims her reasonable needs have increased and her income does not cover her expenses. She claims Husband's needs are met by his income.

The trial "acknowledge[d] that in addition to her own personal needs, Wife is the primary caretaker and provider for her grandchild." 1925(a) Op. at 15. The court, however, found there was no evidence "to suggest that Wife's income is insufficient to cover both her and her grandchild's expenses." *Id.* The court concluded that Wife's gross annual income was $178,512.00 and that, "[e]ven if [Wife's] $56,112.60 in annual expenses d[id] not include any expenses related to providing for her grandchild, a court, without concrete

evidence, would be hard pressed to find that Wife would have insufficient funds to provide for her grandchild . . . ."[3]

The court did not abuse its discretion. As the trial court noted, the parties' grandson resides with Wife. However, the evidence presented established that Wife had adequate income to cover the expenses she claimed.

F. Unreimbursed Medical Expenses

In her last issue, Wife claims the master and court failed to address her concerns that Husband did not pay a percentage of the unreimbursed medical expenses.

Pursuant to a support order, Husband was required to pay 55% of Wife's unreimbursed medical expenses. Compliance with this order relates to the support action, not the equitable distribution order, which is the order on appeal.

Order affirmed.

---

[3] We note the trial court referenced Husband's payment of $908.44 per month in spousal support. However, we will not consider this payment, as it ceases with the entry of the equitable distribution order. **See** R&R at 23 (noting that if the recommendation is upheld, Wife will no longer receive spousal support, but will receive 55% of the marital portion of the military retirement, or "about $17,594 annually"); 23 Pa.C.S.A. § 3103 (defining "alimony pendente lite" as "[a]n order for temporary support granted to a spouse during the pendency of a divorce or annulment proceeding").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>04/01/2021</u>